# McKool Smith

Kevin Kneupper
Direct Dial: (512) 692-8753
kkneupper@McKoolSmith.com

300 W. 6th Street
Suite 1700
Austin, TX 78701

Telephone: (512) 692-8700
Facsimile: (512) 692-8744

September 30, 2014

The Honorable Vince Chhabria
United States District Judge
San Francisco Courthouse, Courtroom 4
17th Floor, 450 Golden Gate Avenue
San Francisco, CA 94102

      RE:    *Unwired Planet, LLC v. Apple, Inc.*, Case No. 3:13-cv-04134-VC, Northern District of California

Dear Judge Chhabria:

      In accordance with the procedure set forth in the parties' stipulated Model Order Regarding E-Discovery in Patent Cases [Dkt #99-1], Plaintiff Unwired Planet, LLC ("Unwired") and Defendant Apple, Inc. ("Apple") respectfully submit this joint letter brief addressing a discovery dispute relating to requests by Unwired Planet for the production of materials from prior litigation between Apple and Samsung.

Respectfully submitted,

| | |
|---|---|
| MCKOOL SMITH, P.C. | GIBSON DUNN & CRUTCHER, LLP |
| /s/ Kevin Kneupper | /s/ Brooke Myers Wallace |
| Kevin Kneupper | Brooke Myers Wallace |
| Attorneys for Plaintiff Unwired Planet, LLC | Attorneys for Defendant Apple, Inc. |

## UNWIRED PLANET'S OPENING STATEMENT:

Unwired Planet seeks the production of certain documents relating to the theories, evidence, and expert testimony that Apple used to support its damages claims in prior litigation against Samsung. In 2012, Apple sued Samsung based on patents covering Apple products, including the iPhone and the iPad, which are also accused of infringement in this litigation. Apple claimed that Samsung "slavishly copied" the iPhone and iPad and that the Samsung products at issue there were "copycat products" of the iPhone and iPad. Unwired Planet seeks discovery about the damages theories Apple used for those Samsung "copycat products."

Apple has refused to provide these materials, stating that they are irrelevant and that they contain confidential third party information. The relevance of those materials is discussed below. As to confidentiality issues, Unwired Planet agreed to the redaction of Samsung confidential information. In any event, Apple has no standing to object on behalf of these third parties, and both parties have handled this problem on other issues by sending notice letters to determine whether there is any objection, something Apple has apparently not done.

In the Ninth Circuit, "[r]elevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). "Information is relevant to the subject matter if it might reasonably assist a party in evaluating the case, preparing for trial or facilitating settlement." *Id.* (citing *Hickman v. Taylor*, 329 U.S. 495, 506-507 (1947). In this district, if a party is seeking the production of **all** documents and materials from a prior patent lawsuit, it must meet the "technological nexus" test, which asks whether the patents involved in the two lawsuits are similar. *Apple Inc. v. Samsung Elecs., Co.*, 2013 U.S. Dist. LEXIS 91450, at *84-89 (N.D. Cal. June 26, 2013). By contrast, if a party is only seeking **some** of the documents from a prior lawsuit, this test does not apply, and "[t]he party seeking discovery instead must show that each category of documents it seeks is relevant under the traditional Rule 26(b) standard." *Id.* at *87-88. Unwired Planet is moving to compel a subset of materials from the litigation between Apple and Samsung, and as such, the traditional Rule 26(b) standard applies. Under Rule 26(b), a party may obtain discovery of materials regarding "any nonprivileged matter that is relevant to any party's claim or defense…." FED. R. CIV. P. 26(b)(1).

## The Expert Reports, Unredacted Declarations, and Depositions of Chris Vellturo:

Apple's damages expert in the Samsung litigation was Chris Vellturo. Dr. Vellturo argued that Apple's iPhone and iPad had "network effects," and that a sale of those products resulted in sales of other Apple products. He further conducted a *Georgia-Pacific* analysis of the "copycat products" and a lost profits analysis alleging that Apple had lost iPhone and iPad sales to the copycat Samsung products.

Dr. Vellturo's expert report and deposition testimony are necessarily relevant because they analyzed "copycat products" of the iPhone and iPad, which are accused of infringement here. In any *Georgia-Pacific* analysis, an expert must analyze a number of factors, and the evidence Dr. Vellturo analyzed would certainly overlap with what is at issue here. For example, Dr. Vellturo would have had to identify comparable licenses under the second *Georgia-Pacific* factor. *Georgia-Pacific v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y.

1970). It is highly likely that any licenses that were comparable for the "copycat products" are also comparable here, and at a minimum Unwired Planet is entitled to consider them. Similarly, *Georgia-Pacific* factor six requires that an expert consider "[t]he effect of selling the patented specialty in promoting sales of other products of the licensee… and the extent of such derivative or convoyed sales." *Id.* In the Samsung case, Dr. Vellturo's publicly available testimony and declarations state that he concluded that the iPhone and iPad result in significant convoyed sales for Apple of other products, such as MacBooks and digital content such as music and apps. Dr. Vellturo claimed to have performed a "statistical analysis" of those convoyed sales. The Federal Circuit has made clear that any "benefit" to the infringer must be considered as part of the *Georgia-Pacific* analysis. *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011); *Monsanto Co. v. McFarling*, 488 F.3d 973, 979-80 (Fed. Cir. 2007). This District has held that a plaintiff is entitled to discovery as to convoyed sales generated by infringing products, which may be part of the royalty base for damages. *Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 U.S. Dist. LEXIS 26289, at *12-15 (N.D. Cal. Feb. 26, 2013). Dr. Vellturo also submitted a declaration about the value of two features accused of infringement in this lawsuit, iCloud and Siri, suggesting the value of those infringing features was analyzed in his report.

Finally, Dr. Vellturo conducted a lost profits analysis as to the iPhone and iPad. Under the *Panduit* factors for that analysis, he would have had to analyze "demand for the patented product," and profits from the patented product, i.e. the iPhone and iPad. *Panduit Corp. v. Stalin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978). Controlling law in this District holds that evidence about the "commercial success" of the iPhone and iPad is relevant. *Positive Techs.*, 2013 U.S. Dist. LEXIS at *14-15. Similarly, under *Panduit* Dr. Vellturo would have had to evaluate whether there were non-infringing substitutes, which may be relevant here.

**The Expert Reports, Declarations, and Depositions of John Hauser:**

Dr. Hauser is a conjoint survey expert who was hired by Apple to conduct a survey of consumers to determine the value of various features in cell phones and tablets and what features were most important to them, in particular as to the Samsung "copycat products." The results of this survey may provide insight into what features are most valuable in the original iPhone and iPad, something that is relevant to *Georgia-Pacific* factor 13. Further, the methodology used by Dr. Hauser is relevant here, because Unwired Planet expects Apple may challenge any conjoint survey conducted by Unwired Planet. Apple should not be heard to advocate this methodology in another lawsuit, and then complain about that same methodology being used for the same types of products here, or take inconsistent positions as to how damages should be calculated.

**Unredacted Copies of Materials Relating to Apple's Motion for Preliminary Injunction:**

As part of the Samsung litigation, Apple filed a motion for a preliminary injunction. Portions of the briefs are public, but some portions have been redacted. The public portions argue that: (1) Apple's iPhone and iPad have network effects, such that the sale of one of those products results in substantial convoyed sales of other products, and (2) that the Siri and iCloud features accused of infringement here are extremely valuable. However, evidence supporting these statements was redacted, both from the briefing and Dr. Vellturo's accompanying declaration referencing a "statistical analysis" he performed as to convoyed sales.

**APPLE'S RESPONSE:**

Unwired Planet acknowledges that, as the moving party seeking discovery, it "must show that each category of documents it seeks is relevant under the traditional Rule 26(b) standard." Yet Unwired Planet fails to demonstrate – and with respect to much of its request fails even to address – how briefs, expert reports, and declarations prepared for an *unrelated* case, involving a *different* party, *different* accused products, and *different* patented inventions are at all relevant to the issues in this case. Moreover, Unwired Planet improperly trivializes the burden to Apple of having to produce the documents at issue, which contain analyses of Apple's and Samsung's confidential business information, necessarily intertwined for the purposes of the prior damages analysis. Attempting to parse such documents to isolate and remove Samsung's third-party confidential information would be unfairly burdensome (if even possible), especially in light of the complete lack of relevance of these documents. Accordingly, Unwired Planet's motion should be denied.

As explained in its motion, Unwired Planet seeks to compel the production of documents prepared for the *Samsung* litigation, including the expert reports, declarations, and deposition transcripts of Chris Vellturo and John Hauser, as well as briefs relating to a preliminary injunction motion.[1] But Unwired Planet fails to make *any* specific showings that the documents it requests would provide any information relevant to issues in this matter. In fact, the Samsung litigation was materially different from this case in several important and pertinent critical respects:

First, the *Samsung* case involved two direct competitors in the marketplace – Apple and Samsung – and how the sales of their competing products affected one another's business. Here, Unwired Planet has never competed with Apple, and does not do so now, as Unwired Planet, LLC is solely a patent assertion entity. Furthermore, in the *Samsung* case, both parties had asserted patents against each other, whereas here, Apple has never asserted a patent against Unwired Planet – since, again, Unwired Planet does not sell a product. Thus, whereas in a competitor lawsuit with bi-directionally asserted patents the inquiry will necessarily focus on the sales of both parties' products and their competition for market share, a case involving a completely *different entity* with no competing products will obviously focus elsewhere. *See, e.g.*, *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (noting that a damages analysis must be tailored towards the type of damages sought). Unwired Planet entirely ignores these fundamental differences, and fails to establish the relevance – notwithstanding these differences – of the prior damages and injunction documents to the present case.

Second, the documents Unwired Planet seeks in its motion relate to entirely different products and patented inventions in the *Samsung* case from those at issue here. The reports prepared by Drs. Vellturo and Hauser analyze the calculation of damages based on sales of *Samsung's products* in the context of their infringement of *Apple's asserted patents* in the prior

---

[1] Apple notes that the John Hauser expert report is publicly available in unredacted form through the U.S. District Court for the Northern District of California's PACER website. Without admitting or conceding that the John Hauser expert report is in any way relevant to this matter, Apple has informed Unwired Planet of its public availability, and understands that the corresponding sections of Unwired Planet's motion are now moot.

3

case, and therefore are simply irrelevant to the accused products in this matter. Indeed, the *Samsung* litigation involved entirely different patented inventions, and Unwired Planet fails to show how the inventions at issue there are relevant to this matter. *Samsung* involved Apple's patented inventions relating to performing actions on a structure in computer data, a universal interface for retrieving information, unlocking a device by performing gestures, and a graphical user interface for providing word recommendations, among others. Notably, *none of those technologies are at issue here*.[2] While Unwired Planet blithely cites Apple's expert's characterization in the *Samsung* case of Samsung's "copycat products," that characterization related to how Samsung's products copied *Apple's patented inventions* at issue in the prior case, and has no relevance to whether Samsung's products are similar to Apple's products with respect to Unwired Planet's *entirely different* alleged inventions here. Apple's damages experts' prior analyses of the Samsung products are therefore simply not relevant to this case.[3] *See ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) (holding that a damages analysis must be tied to the footprint of the claimed invention, and that any evidence unrelated to the claimed invention does not support a damages finding).

Even if Unwired Planet were able to show the relevance of these documents – and it has not – it would be unfairly burdensome for Apple to produce them, and that burden outweighs any need or benefit accruing to Unwired Planet. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). While Unwired Planet brushes aside any possible burden to Apple in its motion, the burden is in fact high. Before producing the documents, Apple would have to isolate and remove Samsung third-party confidential business information. However, as noted above, the expert reports Unwired Planet seeks necessarily integrate data and confidential information from both Apple and Samsung because they analyze the effects of sales of the two competing companies' products in the market place and how they affect each other. *See, e.g.*, *Softview LLC v. Apple Inc.*, Case No. 10-389 (LPS) (D. Del.), 4/23/2013 Telephone Conference Transcript at p.15 (*available* on Westlaw) (denying motion to compel damages expert reports from an unrelated litigation due to burden of segregating confidential information from analysis). Thus, the information is not readily separable into each party's confidential and non-confidential portions. Causing Apple to undertake the painstaking (and quite possibly fruitless) effort of trying to isolate and parse Samsung's confidential information is unfairly burdensome when balanced against Unwired Planet's failure to establish the relevance of the materials at issue.

Finally, while Unwired Planet ignores the question of whether the inventions at issue in the prior case and this one are relevant to each other, the parties, the Court, and the jury will not be able to do so when it comes time for trial, at which point essentially a "mini-trial" on that issue will be required. Unwired Planet should not be permitted to create a sideshow at trial if it cannot meet its burden to establish relevance now. Accordingly, Unwired Planet's motion should be denied.

---

[2] While Unwired Planet mentions Apple's Siri and iCloud products, these products embody numerous features and technologies, involving numerous patents. Unwired Planet fails to show how the value of the patented inventions in the *Samsung* case to Siri or iCloud is relevant here, where different alleged inventions are at issue.

[3] Unwired Planet's reliance on *Positive Techs* is misplaced, as that decision only ordered discovery relating to the value of the allegedly infringing accused feature, and sales potentially generated by that feature, but has nothing to do with documents prepared for an unrelated litigation, or unrelated products and patents. *Positive Techs., Inc. v. Sony Elecs., Inc.*, 2013 U.S. Dist. LEXIS 26289, at *13-15 (N.D. Cal. Feb. 26, 2013).

4

**UNWIRED PLANET'S REPLY:**

Apple does not deny that its damages experts in the Samsung case analyzed whether sales of Apple's iPhone and iPad result in convoyed sales, opined as to their commercial success, analyzed comparable licenses, and performed a study to identify the feature-by-feature value of cell phones (a study that was about the value of generic features of phones and tablets). Instead, it argues that they also dealt with the value of features of the iPhone and iPad not accused of infringing here, and that non-infringing features are not relevant. But in an opinion involving the same Apple products, the Federal Circuit recently faulted a damages expert because he "failed to apportion value between the patented features and the vast number of non-patented features contained in the accused products." *Virnetx, Inc. v. Cisco Sys.*, 2014 U.S. App. LEXIS 17748, at *45 (Fed. Cir. Sept. 16, 2014). Apple's experts in the Samsung case came to specific conclusions about the value of a laundry list of features of the Accused Products. Some of those features are accused of infringing here, and some are not. But all are relevant to any apportionment analysis, which must separate the value of what infringes from the value of what does not. Without data about the value of non-infringing features, Unwired Planet cannot perform an apportionment.

Apple's complaints of burden are similarly meritless. Unwired Planet has narrowed its requests, focusing on two experts in a single prior lawsuit. There are likely less than ten total documents at issue. And Dr. Hauser's deposition likely involves no Samsung confidential information at all, because his report contained none. These are incredibly important documents, which have already performed several parts of the damages analysis here.

**APPLE'S SUR-REPLY:**

Unwired Planet ("UP") continues to sidestep the central issue of whether the documents it seeks are relevant *to this matter*. Apple agrees that *VirnetX* requires an apportionment analysis. But that means that *in this case* the plaintiff UP must prove the value of *UP's* alleged inventions here to the overall value of Apple's mobile devices.[4] The value of *Apple's* entirely different patented inventions from the *Samsung* case is simply not relevant, where there has been no showing – or *any analysis at all* – regarding any relationship between features accused here (or not accused here) and what was at issue in the competitor-device analysis in *Samsung*. UP simply ignores this critical point.

UP's argument regarding burden similarly misses the mark. As discussed in Apple's opposition, the unfair burden to Apple derives not from the number of documents sought, but from the inherent difficulty – if not impossibility – of separating the respective confidential financial information of Apple and Samsung out of a prior damages analysis that necessarily integrates the two (due to their status as direct competitors). UP does not even attempt to address this issue. Moreover, the burden here is particularly unfair where there has been zero showing that the documents being sought are relevant. *See* Order, *Samsung*, No. 12-CV-0630, D.I. 737, *6 (N.D. Cal. Aug. 14, 2013) (finding that proportionality of burden vs. relevance is an "all-to[o]-often ignored discovery principle"). Accordingly, UP's motion should be denied.

---

[4] Notably, the Federal Circuit in *VirnetX* criticized the *plaintiff* patent owner for failing to perform an adequate damages analysis (including failing to apportion), and vacated the damages award. *VirnetX, Inc.* at *41-56. *VirnetX* had nothing to do with requesting damages-related documents from an entirely unrelated litigation.