REDACTED VERSION OF DOCUMENT SOUGHT TO BE FILED UNDER SEAL

Josh Krevitt, #208552
jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

H. Mark Lyon, # 162061
mlyon@gibsondunn.com
Y. Ernest Hsin, # 201668
ehsin@gibsondunn.com
Stuart M. Rosenberg, # 239926
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Rd.
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Apple Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNWIRED PLANET LLC,<br><br>                        Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br><br>                        Defendant. | **Case No. 3:13-cv-4134-VC**<br><br>**APPLE INC.'S MOTION IN LIMINE #4 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING APPLE'S TOTAL REVENUES, TOTAL PROFITS, AND OTHER FINANCIAL INFORMATION**<br><br>**Judge: Honorable Vince Chhabria** |

## I. BACKGROUND

Apple Inc. ("Apple") respectfully moves the Court *in limine* to exclude Unwired Planet LLC ("Unwired Planet") from offering at trial any evidence, testimony, or argument relating to the size and wealth of Apple, including any references to Apple's earnings, market capitalization, stock price, cash reserves (whether held in the United States or overseas), Apple's total revenues and profits (both in the United States and worldwide), and Apple's product-specific prices, revenues, and profits (both in the United States and worldwide).

These types of financial information are not relevant to this case, especially because Unwired Planet is *not* seeking damages based on the Entire Market Value Rule ("EMVR"), and should therefore be excluded under Fed. R. Evid. 402.  Federal Circuit precedent under *Uniloc* consistently holds that a defendant's prices, revenues, and profits are irrelevant when the plaintiff has not demonstrated that the patented features drive demand for the entire accused products – as in this case, where Unwired Planet has not even alleged that the EMVR applies, and does not rely on it as a basis for its damages theories.

Moreover, apart from the Federal Circuit's automatic exclusion of such financial information in a non-EMVR case like this, any other use of Apple's general financial information would have a serious prejudicial effect, at least because the large financial figures resulting from Apple's global success would bias the jury, and skew its perspective on damages, which must only compensate the plaintiff for its patented inventions, and not punish the accused infringer.  Therefore, the prejudicial effect of presenting Apple's financial information also warrants exclusion under Fed. R. Evid. 403 and this District's decisions.

## II.   LEGAL STANDARD

Under Fed. R. Evid. 402, only relevant evidence is admissible at trial.  But even if evidence is potentially relevant, the court may still exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

Patent damages must only "compensate for the infringement," and when "small elements of multicomponent products are accused of infringement . . . it is generally required that royalties be based not on the entire product," because long-standing Supreme Court precedent requires that "the patentee ... must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 66-67 (Fed. Cir. 2012) (*quoting* 35 U.S.C. § 284; *Garretson v. Clark*, 111 U.S. 120, 121 (1884)).  Therefore, Federal Circuit precedent under *Uniloc* and its progeny warns "of the danger of admitting consideration of the entire market value of the accused [products] where the patented component does not create the basis for customer demand."  *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011).  When proven applicable by the plaintiff, the EMVR "allows a patentee to assess damages based on the entire market value of the accused product only where the patented feature creates the 'basis for customer demand' or 'substantially create[s] the value of the component parts.'"  *Id.* at 1318.  But if the EMVR is not at issue, a "disclosure that a company has made" billions of dollars from an allegedly "infringing product cannot help but skew the damages horizon for the jury, regardless of the contribution of the patented component to this revenue."  *Id.* at 1320.

Moreover, evidence of "overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'"  *LaserDynamics*, 694 F.3d at 68.  Furthermore, evidence regarding a defendant's overall financial situation is irrelevant and should be excluded, because "evidence of a defendant's net worth creates the potential that juries will use their verdict to express biases against big businesses."  *Honda Motor Co., Ltd. v. Oberg*, 512 U.S. 415, 416 (1994).

## III.   ARGUMENT

### A.   Apple's General Financial Information Is Not Relevant To Any Issues In This Litigation, And Should Be Excluded Under Federal Rule Of Evidence 402

Evidence of Apple's finances – including information such as its size, market capitalization, stock price, revenues, and profits – is not relevant to any issues in this patent infringement litigation, and should be excluded under Fed. R. Evid. 402.  Put simply, evidence relating to the size or wealth of Apple has no "tendency to make a fact more or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Unwired Planet has articulated no legitimate uses for such evidence, and it has no reasons for attempting to use it other than to gain sympathy before the jury as a "David" to Apple's "Goliath," or to improperly skew the jury's perspective on reasonable royalty damages, where Unwired Planet is *not* basing its damages analysis on the Entire Market Value Rule.  Using Apple's financial information for either of these purposes is not only improper and irrelevant, but would also significantly prejudice Apple.

## B.   Any Use Of Apple's Financial Information At Trial Would Be Highly Prejudicial, And Should Be Excluded Under Federal Rule Of Evidence 403

Apple is one of the world's most financially successful companies, judged both by its high revenues and profits, and its performance on Wall Street.  Yet such evidence of Apple's general financial success is wholly irrelevant to this patent infringement case, and could only serve to bias and confuse the jury.  Evidence about the size and wealth of Apple would also tend to skew the damages horizon for the jury, which may consider Unwired Planet's damages demands to be small, or "conservative," if Unwired Planet is allowed to compare them to Apple's revenues and profits.  Moreover, improperly affecting the jury in this way makes it likely that the jury could compensate Unwired Planet beyond the value contributed to the accused products by the patented features.  Yet this is precisely what is prohibited under *Uniloc* and *LaserDynamics*.  And as the Federal Circuit notes, once financial information describing "billions" of dollars has been presented to the jury, it's impossible ever to put that cat "back into the bag." *LaserDynamics*, 694 F.3d at 68.

For all these reasons, this District has consistently found that evidence of a party's total revenues, profits, and other financial information should be excluded at the pre-trial stage, because "Federal Circuit case law does not permit it", "and the probative value of evidence related to [a party's] size, wealth, or overall revenues is substantially outweighed by the risk of

unfair prejudice, confusion of the issues and misleading the jury necessitating its exclusion under Rule 403." *HTC Corp. v. Tech. Props. Ltd.*, No. 5:08-cv-00882, 2013 WL 4782598 at *6 (N.D. Cal., Sept. 6, 2013) (*granting* motion *in limine* to exclude evidence of HTC's market value, size, wealth, and total revenues); *see also Golden Bridge Tech. v. Apple Inc.*, No. 5:12-cv-04882, 2014 WL 4057187 at *2 (N.D. Cal., June 1, 2014) (*granting* motion *in limine* to exclude "Any Argument or Testimony Regarding Apple's Size, Wealth, Market Capitalization, Cash, Overall Revenues, Revenues on Accused Products, or Entire Market Value of Apple's Accused Sales"); *Mformation Techs. Inc. v. Research in Motion Ltd.*, No. 08-cv-04990, 2012 WL 1142537 at *4 (N.D. Cal., March 29, 2012) (*granting* motion to exclude financial evidence because "unfair prejudice would result from letting the jury hear that the accused devices generated a certain amount of profits");  *Multimedia Patent Trust v. Apple Inc.*, No. 10-cv-2618, 2012 WL 5873711 at *6 (S.D. Cal., Nov. 20, 2012) (*granting* motion to exclude evidence of the defendant's total revenue and profits for the accused products because it "carries a substantial danger of unfair prejudice to the Defendant").[1]  Apple's general financial information is not probative of *any* issue in this case, significant prejudice to would result from its disclosure to the jury, and Unwired Planet should be excluded from offering it.

**C.    The Entire Market Value Rule Is Not Relevant Here Because Unwired Planet Is Not Relying On The EMVR In This Litigation**

As discussed above, the Entire Market Value Rule provides the only exception where a plaintiff may offer evidence of the total revenues and profits for the accused products.  *Uniloc*, 632 F.3d at 1318.  But in this case, Unwired Planet does not base its damages analysis and royalty calculations on the EMVR – in fact, neither of Unwired Planet's damages-related experts (Mr. Mills and Dr. Allenby) even mentions the EMVR in their reports.  Because Unwired Planet has not invoked the EMVR, it also has not alleged that the total revenues or profits associated with the accused Apple products represent the royalty base for its damages calculations.

---

[1] *See also NetAirus Techs, LLC v. Apple Inc.*, No. 2:10-cv-03257, D.I. 523, Order at 3 (C.D. Cal., Oct. 21, 2013) (*granting* motion *in limine* to exclude evidence of Apple's company-wide financial information).

Similarly, Unwired Planet has not alleged – let alone offered any evidence – that any of the patented features create the "basis for customer demand" for any of the accused Apple products. Instead, Unwired Planet's damages demands are calculated as per-unit, dollar-denominated royalties for the accused products. Unwired Planet did not calculate these royalties by applying a percentage to the price, revenue, or profit of any accused product, but instead arrived at its royalty rates by analyzing license agreements and a consumer survey. Therefore, any evidence of Apple's prices, revenues, profits, or other financial information is irrelevant to Unwired Planet's damages case, and should be excluded.

However, even though Unwired Planet does *not* rely on the EMVR, and does *not* calculate royalty rates based on Apple's product prices, total revenues, or total profits, its expert Mr. Mills includes numerous references to this information in his report, and prepared entire exhibits depicting Apple's overall financials. *See, e.g.*, D.I. 324-21 at 12-20, 134-136, 194-196; Ex. 1, Opening Report of Mr. Robert Mills, Exhibits 9-34. This evidence is plainly irrelevant to the case, and Unwired Planet has no reason to use Apple's financial information at trial. Apple understands that Unwired Planet's damages analysis also cites to evidence of the total number of *units* sold during the damages period for the accused Apple products, and Apple does not contest that Unwired Planet may use evidence of the number of units sold, since its damages analysis includes per-unit royalty rates.

But Apple's general financial information – including evidence of its size, market capitalization, stock price, revenues, and profits – is irrelevant to Unwired Planet's damages theories for all of the reasons discussed above, and "the risk of unfair prejudice, confusion of the issues and misleading the jury necessitat[es] its exclusion under Rule 403." *HTC Corp.*, 2013 WL 4782598 at *6.

## IV.    CONCLUSION

For all the foregoing reasons, Apple respectfully moves the Court *in limine* to exclude Unwired Planet from offering at trial any evidence, testimony, or argument regarding Apple's size, wealth, market capitalization, earnings, stock price, cash reserves, total revenues, total profits, or product-specific prices, revenues, and profits.

1    Dated:  April 22, 2015.

2                                              By: */s/ Y. Ernest Hsin*

3                                              Josh Krevitt
                                               jkrevitt@gibsondunn.com
4                                              GIBSON, DUNN & CRUTCHER LLP
                                               200 Park Ave.
5                                              New York, NY  10166-0193
                                               Telephone:  212.351.4000
6                                              Facsimile:  212.351.4035

7                                              H. Mark Lyon
                                               mlyon@gibsondunn.com
8                                              Y. Ernest Hsin
                                               ehsin@gibsondunn.com
9                                              Stuart Rosenberg
                                               srosenberg@gibsondunn.com
10                                             GIBSON, DUNN & CRUTCHER LLP
                                               1881 Page Mill Rd.
11                                             Palo Alto, CA  94304-1211
                                               Telephone:  650.849.5300
12                                             Facsimile:  650.849.5333

13                                             *Attorneys for Defendant Apple Inc.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOSH KREVITT, SBN 208552
jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166-0193
Telephone:    212.351.4000
Facsimile:    212.351.4035

H. MARK LYON, SBN 162061
mlyon@gibsondunn.com
Y. ERNEST HSIN, SBN 201668
ehsin@gibsondunn.com
STUART M. ROSENBERG, SBN 239926
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone: 650.849.5300

BROOKE MYERS WALLACE, SBN 259169
bwallace@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000

*Attorneys for Defendant Apple Inc.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNWIRED PLANET LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>APPLE INC.,<br><br>                    Defendant. | **Case No. 3:13-cv-4134-VC**<br><br>**DECLARATION OF Y. ERNEST HSIN IN SUPPORT OF APPLE INC.'S MOTION IN LIMINE #4 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING APPLE'S TOTAL REVENUES, TOTAL PROFITS, AND OTHER FINANCIAL INFORMATION**<br><br>**Judge:  Honorable Vince Chhabria** |

I, Y. Ernest Hsin, declare and state:

1.      I am a partner at Gibson, Dunn & Crutcher LLP and counsel of record for Defendant Apple Inc. ("Apple") in this action.  The matters stated below are of my personal knowledge.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Exhibits (1-89) to Unwired Planet expert Mr. Robert Mills's Opening Report, as served on December 3, 2014.

3.      I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed this 22nd day of April, 2015, in California.

By:   _____*/s/ Y. Ernest Hsin*_____
Y. Ernest Hsin

2

REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

# EXHIBIT 1

**EXHIBIT 1**

**MICRONOMICS**
*Economic Research & Consulting*

Micronomics
Forty-Sixth Floor
777 South Figueroa Street
Los Angeles, California 90017
Tel:  213 629 2655
Fax: 213 688 8899
www.micronomics.com

# ROBERT MILLS
## Director

Robert Mills has extensive experience quantifying economic damages in connection with commercial litigation.  He has served as an expert witness or consultant in a wide range of matters, including patent, trademark and copyright infringement, theft of trade secrets, breach of contract, interference, conversion, fraud, predatory pricing, attempted monopolization, and labor disputes. His experience spans many industries, including software, semiconductors, telecommunications, manufacturing, apparel, insurance, energy, entertainment, waste, real estate, sporting goods, health care, pharmaceuticals, and medical devices, among others.  Mr. Mills has testified as an economic expert in Federal District Court, state courts in multiple jurisdictions, and at arbitration.  He has appeared at mediation venues and before the U.S. Department of Justice.

Mr. Mills also engages in economic research and consulting activities outside the context of litigation.  He has assessed the anticipated competitive effects of mergers and joint ventures on behalf of government regulatory agencies and merging parties; developed forecasts and strategic recommendations for government agencies and clients involved with real estate development; and assisted clients with the valuation of intangible assets and entire businesses.

**FIELDS OF CONCENTRATION**

Intellectual Property; Industrial Organization; Statistics; Economic Valuation and Damages Calculations

**EMPLOYMENT**

Micronomics, 1998 – present (affiliated with InteCap, Inc., 2000 – 2003)
Los Angeles, California

Hobson Johnson & Associates
Associate, 1996 – 1998
Portland, Oregon

University of California, Santa Barbara
Teaching Assistant, Department of Economics, 1994 – 1995
Santa Barbara, California

**SELECTED CONSULTING EXPERIENCE**

Economic Damages/Lost Profits

- Calculated lost profits on behalf of plaintiffs and defendants in connection with contract disputes, patent infringement, fraud, interference, antitrust, and other causes of action. Addressed lost sales, incremental cost, market definition, capacity, foreseeability, mitigation, and alter ego issues.

- Quantified relevant profits under disgorgement theories of damages.

- Determined magnitude of alleged underpayment of overtime to a class of exempt employees on behalf of a national retail chain.

- Quantified lost earnings and benefits in connection with wrongful termination and personal injury matters.

- Analyzed irreparable harm issues in connection with motions for temporary restraining orders and preliminary injunctions.

Intellectual Property

- Determined reasonable royalties and calculated lost profits in connection with patent infringement matters on behalf of patent owners and alleged infringers. Addressed royalty base, reasonable royalty rates, commercial success, non-infringing substitutes, availability, comparability, capacity constraints, convoyed sales, price erosion damages, and the entire market value rule.

- Calculated damages on behalf of clients involved with theft of trade secrets, trademark infringement, and copyright infringement litigation.

- Reviewed numerous license and cross-license agreements covering technologies related to telecommunications, semiconductors, software, sporting goods, medical devices, security, construction materials, motion control, and consumer products, among other industries.

- Assisted with the negotiation of patent license agreements.

Valuation

- Valued controlling and minority interests in closely held businesses. Addressed issues of liquidity, marketability, comparability, and the cost of capital.

- Valued stock options, earn-outs, and escrowed contingencies in connection with acquisitions and intellectual property transfers.

- Analyzed commercial and industrial real estate appraisals and made strategic recommendations to government agencies contemplating real estate transactions.

Antitrust

- Assessed the anticipated competitive effects of mergers, acquisitions, and joint ventures on behalf of government regulatory agencies as well as merging parties.

- Estimated anticipated post-merger prices using merger simulation techniques on behalf of a manufacturer of branded consumer products. Presented findings to U.S. Department of Justice.

- Conducted studies of market definition, attempted monopolization, below-cost pricing, price discrimination, and economic damages on behalf of plaintiffs and defendants involved with antitrust litigation.

- Evaluated price fixing allegations in the semiconductor industry.

- Analyzed relevant markets and economic damages in connection with a patent misuse claim.

- Conducted econometric analyses of pricing and output in a matter involving price fixing allegations.

Real Estate

- Assisted government agencies with eminent domain compensation issues.

- Prepared numerous feasibility studies and financial projections for income producing properties, including commercial, industrial, residential, and resort projects.

- Prepared forecasts of vacancy, absorption, rental rates, and new construction for financial institutions, government agencies, and real estate developers.

- Conducted study of student housing options on behalf of a university. Recommended adjustments to university housing rental rates and determined target rates for planned development.

- Recommended development strategies to numerous real estate developers. Addressed product size, mix, location, and other qualitative factors.

- Calculated damages caused by interference with development of a master planned community.

Cost-Benefit Analysis

- Estimated the economic, fiscal, and social impact of instituting system development fees for new real estate development.

- Assisted a multi-jurisdiction planning commission in assessing economic, fiscal and social impacts of anticipated demilitarization.

- Advised the developer of a major destination resort of the economic and fiscal impacts of the proposed project.

- Advised client of financial and other costs and benefits of relocating headquarters and manufacturing operations.

- Assessed the impact of a large retail establishment on small retailers located near its stores.

- Recommended development strategies to a port authority based on analysis of the costs and benefits of its options.

Econometrics

- Developed econometric models used to assess the competitive impacts of proposed mergers.

- Estimated own- and cross-price elasticity of demand for differentiated products in the baking industry.

- Prepared and evaluated revenue and earnings forecasts on behalf of plaintiffs and defendants involved with commercial litigation.

- Evaluated econometric models provided to a government regulatory agency by parties contemplating a merger.

- Developed econometric models used to measure the effects of economic events on the value of firms.

- Assisted clients with survey design, sampling, and hypothesis testing.

Risk Analysis

- Assisted law firms, corporate legal departments, and mediators with assessments of litigation risk and the expected value of litigation.

- Analyzed risk associated with litigation versus settlement in insurance claim disputes on behalf of insurers and insured parties.

**RECENT TESTIMONY**

1. *Sentius International, LLC v. Microsoft Corporation*
   United States District Court, Northern District of California
   Case No. 5:13-CV-825-PSG
   Patent Infringement
   Reports, Deposition

2. *Droplets, Inc. v. Overstock.com, Inc., et al.*
   United States District Court, Eastern District of Texas
   Case No. 2:11-CV-401
   Patent Infringement
   Reports, Deposition

3. *Smartflash, LLC, et al. v. Apple Inc., et al.*
   United States District Court, Eastern District of Texas
   Case Nos. 6:13-CV-447 and 6:13-CV-448
   Patent Infringement
   Reports, Depositions

4. *PersonalWeb Technologies, LLC, et al. v. Yahoo! Inc.*
   United States District Court, Eastern District of Texas
   Case No. 6:12-CV-00658-LED
   Patent Infringement
   Reports, Deposition

5. *Superspeed, LLC v. Google Inc.*
   United States District Court, Southern District of Texas
   Case No. 4:12-CV-01688
   Patent Infringement
   Report, Deposition

6. *Straight Path IP Group, Inc. v. Bandwidth.com, Inc., et al.*
   United States District Court, Eastern District of Virginia
   Case No. 1:13-CV-00932-AJT-IDD
   Patent Infringement
   Reports, Depositions

7. *The Quantum World Corporation v. Dell, Inc., et al.*
   United States District Court, Western District of Texas
   Case No. 1:11-CV-00688-SS
   Patent Infringement
   Report, Deposition

8. *Battle Toys, LLC v. Lego Systems, Inc.*
   United States District Court, District of Delaware
   Case no. 1:12-CV-00928-GMS
   Patent Infringement
   Reports, Deposition

9. *AAMP of Florida, Inc. v. Audionics Systems, Inc.*
   United States District Court, Central District of California
   Case No. 2:12-cv-10763-MMM-JEM
   Patent Infringement
   Report, Deposition

10. *Beneficial Innovations, Inc. v. Advance Publications, Inc., et al.*
    United States District Court, Eastern District of Texas
    Case No. 2:11-cv-229-TJW
    Patent Infringement
    Report, Deposition

11. *SimpleAir, Inc. v. Microsoft Corporation, et al.*
    United States District Court, Eastern District of Texas
    Case No. 2:11-cv-416
    Patent Infringement
    Report, Depositions, Trials

12. *Martin Fleisher, et al. v. Phoenix Life Insurance Company*
    United States District Court, Southern District of New York
    Case No. 11 Civ. 8405 (CM)
    Breach of Contract
    Reports, Deposition

13. *TracBeam, LLC v. AT&T Inc., et al.*
    United States District Court, Eastern District of Texas
    Case No: 6:11-cv-00096-LED
    Patent Infringement
    Reports, Deposition

14. *Lake Cherokee Hard Drive Technologies, LLC v. Bass Computers, Inc. et al.*
    United States District Court, Eastern District of Texas
    Case No.: 2:10-cv-216
    Patent Infringement
    Reports, Deposition, Trial

15. *MicroUnity Systems Engineering, Inc. v. Apple, Inc., et al.*
United States District Court, Eastern District of Texas
Case No.: 02:10-cv-91-LED-RP
Patent Infringement
Reports, Deposition

16. *Ecologic Solutions, LLC v. Bio-Tec Environmental, LLC, et al.*
Arbitration before American Arbitration Association
Case No. 76 117 Y 00325 10
Breach of contract, misappropriation of trade secrets, fraud
Report, Deposition

17. *Gustavo Naranjo, et al. v. Spectrum Security Services, Inc.*
Superior Court of the State of California
Case No. BC 372146
Violations of California Labor Code
Report, Deposition

18. *REC Software USA, Inc. v. Bamboo Solutions Corporation, et al.*
United States District Court, Western District of Washington
Case No. 2:11-cv-554-JLR
Patent Infringement
Report, Deposition

19. *Versata Software, Inc., et al. v. Internet Brands, Inc., et al.*
United States District Court, Eastern District of Texas
Civil Action No. 2:08-cv-313-WCB
Patent Infringement, Breach of Contract, Interference
Reports, Deposition, Trial

20. *Samuel D. Adams v. Bio-Tec Environmental, LLC, et al.*
Arbitration before American Arbitration Association
Case No. 76-174-00048-11 LGB
Breach of Contract, Misappropriation of Trade Secrets
Reports, Trial

21. *SimpleAir, Inc. v. AWS Convergence Technologies, Inc., et al.*
United States District Court, Eastern District of Texas
Case No. 2:09-cv-289 (CE)
Patent Infringement
Reports, Deposition

22. *Shane Malek, et al. v. GR Hair Solutions, LLC, et al.*
    Arbitration before JAMS
    Reference No. 1220041531
    Breach of Contract
    Report, Trial

23. *LML Patent Corp. v. JPMorgan Chase & Co., et al.*
    United States District Court, Eastern District of Texas
    Case No. 2:08-cv-448 DF
    Patent Infringement
    Report, Depositions

24. *SP Syntax LLC, et al. v. James Ching Hua Li, et al.*
    Superior Court of the State of California
    No. BC 402910
    Negligent Misrepresentation
    Deposition, Trial

25. *Network-1 Security Solutions, Inc. v. Cisco Systems, Inc., et al.*
    United States District Court, Eastern District of Texas
    Case No. 6:08cv030-LED
    Patent Infringement
    Report, Depositions, Trial

26. *Trent West v. Jewelry Innovations, Inc., et al.*
    United States District Court, Northern District of California
    Case No. C 07-1812 JF (HRL)
    Patent Infringement
    Report, Deposition

27. *Abstrax, Inc. v. Sun Microsystems, Inc., et al.*
    United States District Court, Eastern District of Texas
    Case No. 2:07-CV-333-(DF)(CE) and 2:07-CV-221-(DF)(CE)
    Patent Infringement
    Reports, Depositions

28. *One Industries, LLC v. Jim O'Neal Distributing, Inc.*
    U.S. District Court, Central District of California
    No. 06 CV 1133 JAH (AJB)
    Trademark and Trade Dress Infringement
    Report, Deposition

**EDUCATION**

> M.A., Economics, University of California, Santa Barbara, 1995
>
> M.S., Applied Economics, Portland State University, 1994
>
> B.S., Economics and History, Portland State University, 1992

**PAPERS/SPEECHES/PRESENTATIONS**

- "Practical Elements of Finance," Practising Law Institute, New York, New York, June 13-14, 2011.

- "Regression Analysis Applications in Litigation," (with Dubravka Tosic), chapter in *Pocket MBA: Finance for Lawyers*, Practising Law Institute, March 2011.

- "Industry Norms and Reasonable Royalty Rate Determination," (with Roy Weinstein and Michelle Porter), *les Nouvelles*, March 2008.

- "Market Concentration and Unilateral Effects," UCLA First Annual Institute on US and EU Antitrust Aspects of Mergers and Acquisitions, Ritz-Carlton Hotel, Marina Del Ray, California, February 28, 2004.

- "Hot Topics in Intellectual Property Valuation," California Mandatory Continuing Legal Education Program, Los Angeles, November 2000.

- "Valuing Intellectual Property," California Mandatory Continuing Legal Education Program, Los Angeles, July 2000.

- "Unilateral Effects in Merger Analysis: The Simulation Approach," for the Los Angeles County Bar Association, February 1999.

**AFFILIATIONS**

> American Economic Association
>
> Licensing Executives Society
>
> American Bar Association, Intellectual Property Law Section, Associate Member

REMAINDER OF EXHIBIT 1

FILED UNDER SEAL

Courtland L. Reichman
SBN 268873
creichman@mckoolsmith.com
MCKOOL SMITH HENNIGAN, P.C.
255 Shoreline Drive, Suite 510
Redwood Shores, CA 94065
Telephone: (650) 394-1400
Fax: (650) 394-1422

Theodore Stevenson III
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
300 Crescent Court, Suite 1500
MCKOOL SMITH, P.C.
Dallas, Texas 75201
Telephone: (214) 978-4000
Fax: (214) 978-4044

Kevin Burgess
Texas State Bar No. 24006927
kburgess@mckoolsmith.com
John B. Campbell
Texas State Bar No. 24036314
jcampbell@mckoolsmith.com
MCKOOL SMITH, P.C.
300 W. 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Fax: (512) 692-8744

*Attorneys for Plaintiff*

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company, | **Case No. 3:13-cv-4134-VC (JCS)** |
| Plaintiff, | **UNWIRED PLANET'S RESPONSE TO APPLE INC.'S MOTION IN LIMINE #4 TO EXCLUDE EVIDENCE, TESTIMONY, AND ARGUMENT REGARDING APPLE'S TOTAL REVENUES, TOTAL PROFITS, AND OTHER FINANCIAL INFORMATION** |
| v. | |
| APPLE INC., a California corporation, | |
| Defendant. | |
| | **JUDGE: Hon. Vince Chhabria** |

1

McKool Smith Hennigan, P.C.
Redwood Shores, CA

## I.      INTRODUCTION

Apple's motion *in limine* #4 should be denied. Unwired Planet appreciates the bounds set forth in *Uniloc* and fully plans to abide by that case's instructions regarding company-wide earnings, market capitalization, stock price, cash reserves, total revenue, and total profits. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318-21 (Fed. Cir. 2011). So long as Apple does not open the door, Unwired Planet does not plan to mention specifics related to this data. However, precluding references to Apple's product-specific revenues, profits, and prices, as well as Apple's size, goes too far, precluding relevant evidence relied on by Unwired Planet's expert Mr. Mills in forming his opinions.

## II.     *UNILOC* AND ITS PROGENY HOLD THAT EVIDENCE THAT IS BOTH IRRELEVANT AND INFLAMMATORY SHOULD BE PRECLUDED—RELEVANT EVIDENCE IS NOT PRECLUDED

*Uniloc* stands for the proposition that some evidence is so far removed from being relevant, and so inflammatory, that reference to it will inevitably cause the jury to improperly skew damages. *Id.* In *Uniloc* the plaintiff calculated its royalty by relying on internal documents of the defendant to calculate a per-unit royalty rate, and then applied an adjusted rate to the number of units sold. *Id.* at 1311. The Plaintiff then "checked" this reasonable royalty analysis by also making reference to approximately $19 billion in revenue derived from the sale of the accused products. *Id.* This second "check" was determined to be wholly unrelated to the actual calculation of damages that was offered, was determined to violate the Entire Market Value Rule ("EMVR"), and was therefore inappropriately admitted. *Id.* at 1318-20. Compounding the issue of having this improperly admitted "check" presented to the jury was the fact that as part of that check, a huge $19 billion figure related to the total revenue of the accused products was stated in front of the jury, which caused the jury to skew its damages award "regardless of the contribution of the patented component to this revenue." *Id.* at 1320. *Uniloc* is clear—it is not that total revenues related to accused products can never be relied on or mentioned in front of the jury—rather, the Court must ensure that when these numbers are presented, that they are not "irrelevant" to the analysis used to derive the damages expert's end result. *Id.* at 1319.

**-1-**

The Northern District of California cases relied on by Apple are completely in accord with the explanation of *Uniloc* above—irrelevant numbers used as a "check" should be precluded, but there is no precedent for precluding relevant numbers actually used in the expert's damages calculation. *HTC Corp. v. Tech. Props. Ltd.*, No. 5:08-cv-00882, 2013 U.S. Dist. LEXIS 129263, at *18-19 (N.D. Cal. Sept. 6, 2013) (holding that an irrelevant "check" should be precluded); *Golden Bridge Tech. v. Apple, Inc.*, No. 5:12-cv-04882, 2014 U.S. Dist. LEXIS 76339, at *5-7 (N.D. Cal. June 1, 2014) (striking plaintiff's damages expert from offering any opinion at all, making the precluded revenues irrelevant); *Mformation Techs., Inc. v. Research in Motion Ltd.*, No. C 08-04990, 2012 U.S. Dist. LEXIS 56784, at *16-19 (N.D. Cal. Mar. 29, 2012) (excluding an opinion based on EMVR first, then precluding reference to total profits); *Multimedia Patent Trust v. Apple, Inc.*, No. 10-CV-2618, 2012 U.S. Dist. LEXIS 165928, at *20, 25 (precluding reference to total revenues because the expert's "ultimate conclusions" were independently derived from a separate analysis; reference to them was simply a check on that analysis); *NetAirus Techs, LLC v. Apple, Inc.*, No. 2:10-cv-03257, Dkt. No. 523, Order at 3 (C.D. Cal. Oct. 21, 2013) (only granting preclusion of company-wide financial information). As explained below, Unwired Planet's damages expert Mr. Mills actually uses Apple's product-specific revenues, profits, and prices, as well as Apple's size, when forming his opinions, and as such, these numbers are highly relevant and should not be precluded. *See Digital Reg. of Tex., LLC v. Adobe Sys.*, No. C 12-1971, 2014 U.S. Dist. LEXIS 115565, at *19-20 (N.D. Cal. Aug. 19, 2014) (permitting reliance on global figures that were used to calculate gross profit margins relied on by the expert). Furthermore, these numbers being part of an expert's standard calculations, rather than just being thrown up in front of the jury as some independent and unrelated huge number, limits the risk of prejudice highlighted in *Uniloc*.

## III.   MR. MILLS RELIES ON APPLE'S PRODUCT-SPECIFIC REVENUES AND PROFITS

Unwired Planet's damages expert relies on Apple's product-specific revenues and profits in order to calculate a reasonable royalty in this case. As part of his damages report, Mr. Mills takes the standard approach of evaluating damages under a "hypothetical negotiation framework" in which the

McKOOL SMITH HENNIGAN, P.C.

1  *Georgia-Pacific* factors are applied to the facts of this case. Expert Report of R. Mills, at 53-55. One

2  of the *Georgia-Pacific* factors that Mr. Mills considers in his analysis is "the portion of the realizable

3  profit that should be credited to the invention." *Id.* at 188-200. Mr. Mills relies on the opinion of Dr.

4  Allenby, who conducted a conjoint survey that measured the consequences to Apple if it were forced

5  to replace patent-enabled features with certain alternatives. *Id.* at 188-90. The results of Dr.

6  Allenby's survey were then used by Mr. Mills to calculate at-risk profits associated with removing

7  the patent-enabled features—the amount of money that "Apple would stand to lose" without access

8  to technology covered by the patents-in-suit. *Id.* at 190-96. In order to calculate at-risk profits, Mr.

9  Mills needed to evaluate the total revenues and total profits associated with the accused iPhones. *Id.*

10 Without these numbers, Mr. Mills' could not perform his analysis. As Mr. Mills explained in his

11 expert report, "[t]he profit that Apple would stand to lose if it had implemented the identified

12 alternatives ('at-risk profit') can be estimated for each of the accused features considered in Dr.

13 Allenby's survey *by applying Apple's quarterly profit margin for the iPhone to quarterly at-risk*

14 *revenue for each of the features.*" *Id.* at 195 (emphasis added). This amount is then spread over the

15 accused base to determine an average at-risk profit per unit. *Id.* at 196-97. These resulting "estimates

16 provide an indication of Apple's willingness to pay for a license to the '092 patent, the '260 patent,

17 and the '446 patent," and as such are central to Mr. Mills' opinion. *Id.* at 212.

18        Because Mr. Mills relies on product-specific revenues and profits to calculate a reasonable

19 royalty in this case, these numbers are not irrelevant to issues-in-dispute, and as such, Mr. Mills

20 should not be precluded from making reference to these numbers when presenting evidence to the

21 jury. *See Uniloc USA, Inc.*, 632 F.3d at 1318-21 (precluding only evidence that was irrelevant to the

22 damages calculation); *Digital Reg. of Tex., LLC*, 2014 U.S. Dist. LEXIS 115565, at *19-20.

23 Furthermore, discussing evidence of Apple's product-specific revenues and profits will not prejudice

24 Apple. These numbers are not the $770 billion market cap that Apple wants to keep from the jury, or

25 the $58 billion quarterly revenue earnings Apple just disclosed this week and that *Uniloc* is

26 concerned with. *See Uniloc USA, Inc.*, 632 F.3d at 1320. Rather, the product-specific amounts relied

27 on by Mr. Mills relate directly to the accused products and are only one necessary input in several

28

McKool Smith Hennigan, P.C.
Redwood Shores, CA

3

1    steps that are used to arrive at reasonable royalty estimates in this case. As such, there is no risk of

2    letting the proverbial cat out of the bag.

3    **IV.    MR. MILLS RELIES ON APPLE'S PRODUCT-SPECIFIC PRICES**

4          In his reply report, Mr. Mills analyzes the differences in business models between Microsoft

5    and Apple in relation to the comparability of the Microsoft license. Reply Expert Report of Robert

6    Mill, at 7-8. Mr. Mills relies on the fact that "Apple sells mobile devices and ███████████

7    ████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████

9    ████████████████████████████████████████████.  *Id.* Mr. Mills must

10   consider the $600 selling price of an iPhone in order to make his calculation. As such, the price of an

11   iPhone is relevant and should not be precluded. *See Uniloc USA, Inc.*, 632 F.3d at 1318-21

12   (precluding only evidence that was irrelevant to the damages calculation); *Digital Reg. of Tex., LLC*,

13   2014 U.S. Dist. LEXIS 115565, at *19-20.

14          Additionally, the public knows that cellular phone prices are subsidized by carriers, and that

15   Apple prices its products higher than the typical carrier-related price. *See, e.g.*, "New iPhone Faces

16   Risk as Carriers Phase Out Subsidies," *available at* http://www.wsj.com/articles/new-iphone-faces-

17   risk-as-carriers-phase-out-subsidies-1410133579. Apple's own Apple Store website sells "unlocked

18   and contract-free" iPhones in the $600-dollar range. *See, e.g.*, Apple Store Website, *available at*

19   http://store.apple.com/us/buy-iphone/iphone6. This being so well known, there will be no prejudice

20   to Apple if this information is relied on by Unwired Planet during trial.

21   **V.    MR. MILLS RELIES ON APPLE'S SIZE**[1]

22          Apple claims that its "size" has no relevance to this case, but, assuming size includes market

23   share, market position, relative footprint in the industry, and similar information about Apple's

24   business, this claim contradicts well established precedent regarding the determination of a

25   comparable license. As recently explained in *Sentius*, "[t]he 'use of past patent licenses under

26

27   _____
     [1] Apple is unclear regarding what is meant by "Apple's size." To the extent this includes an
     explanation of Apple's overall position in the United States market for mobile devices, this
28   information is relevant, as explained below.

McKool Smith Hennigan, P.C.
Redwood Shores, CA

1  [Georgia-Pacific] factors 1 and 2 must account for differences in the technologies and economic

2  circumstances of the contracting parties.'" *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-cv-00825,

3  2015 U.S. Dist. LEXIS 10423, at *25 (N.D. Cal. Jan. 27, 2015).

4      Mr. Mills considered the "size" of Apple when he performed his analysis of the license

5  agreement between Unwired Planet and Lenovo. Specifically, Mr. Mills considered Apple's

6  footprint in different markets, including the extent to which Apple's business and accused products

7  touch on cloud and server aspects of the market, mobile device aspects, and infrastructure aspects.

8  Expert Report of R. Mills, at 218-19. The fact that Apple is a bigger player in more market areas

9  than Lenovo is an important fact in the comparability of the Lenovo license in this case. *Id.* Mr.

10  Mills also considered the "size" of Apple when he performed his analysis of the license agreement

11  between Unwired Planet and Microsoft. Specifically, Mr. Mills considered differences in business

12  models and differences in sales and market share between Microsoft and Apple to support his

13  conclusions. Reply Expert Report of Robert Mill, at 7-11.

14      Because Mr. Mills relies on the "size" of Apple when performing necessary comparability

15  analyses regarding related patent licenses, the "size" of Apple should not be precluded from

16  discussion in this case. *See Uniloc USA, Inc.*, 632 F.3d at 1318-21 (precluding only evidence that

17  was irrelevant to the damages calculation); *Digital Reg. of Tex., LLC*, 2014 U.S. Dist. LEXIS

18  115565, at *19-20.

19  **VI.    CONCLUSION**

20      Because evidence relating to Apple's product-specific revenues, profits, and prices, as well

21  as Apple's size, is more probative than it is prejudicial to issues in dispute in this case, Apple's

22  motion *in limine* #4 should be denied.

23

24

25

26

27

28

McKool Smith Hennigan, P.C.

Redwood Shores, CA

1

2

3 DATED:        May 1, 2015                McKOOL SMITH HENNIGAN, P.C.

4

5

   By /s/ Courtland L. Reichman
6                                         Courtland L. Reichman (SBN 268873)
                                          creichman@mckoolsmithhennigan.com
7                                         MCKOOL SMITH HENNIGAN, P.C.
                                          255 Shoreline Drive, Suite 510
8                                         Redwood Shores, CA 94065
                                          Telephone:    (650) 394-1400
9                                         Facsimile:    (650) 394-1422

10                                        Theodore Stevenson III
                                          Texas State Bar No. 19196650
11                                        tstevenson@mckoolsmith.com
                                          Mitchell R. Sibley
12                                        Texas State Bar No. 24073097
                                          msibley@mckoolsmith.com
13                                        MCKOOL SMITH, P.C.
                                          300 Crescent Court, Suite 1500
14                                        Dallas, Texas 75201
                                          Telephone:    (214) 978-4000
15                                        Fax:          (214) 978-4044

16                                        Kevin Burgess
                                          Texas State Bar No. 24006927
17                                        kburgess@mckoolsmith.com
                                          John B. Campbell
18                                        Texas State Bar No. 24036314
                                          jcampbell@mckoolsmith.com
19                                        Kevin Kneupper
                                          Texas State Bar No. 24050885
20                                        kkneupper@mckoolsmith.com
                                          James E. Quigley
21                                        Texas State Bar No. 24075810
                                          jquibley@mckoolsmith.com
22                                        Mario A. Apreotesi
                                          Texas State Bar No. 24080772
23                                        mapreotesi@mckoolsmith.com
                                          MCKOOL SMITH, P.C.
24                                        300 W. 6th St., Suite 1700
                                          Austin, Texas 78701
25                                        Telephone:    (512) 692-8700
                                          Fax:          (512) 692-8744
26

27                                        ATTORNEYS FOR PLAINTIFF UNWIRED
                                          PLANET LLC
28
                                          6

McKOOL SMITH HENNIGAN, P.C.
Redwood Shores, CA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McKOOL SMITH HENNIGAN, P.C.
Redwood Shores, CA

Case No. 3:13-cv-4134-VC (JCS)                    UP'S RESPONSE TO APPLE'S MIL #4

McKool 1090614v1

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on May 1, 2015 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.


*/s/ Courtland L. Reichman*

MCKOOL SMITH HENNIGAN, P.C.
Redwood Shores, CA

**8**

Case No. 3:13-cv-4134-VC (JCS)                    UP'S RESPONSE TO APPLE'S MIL #4

McKool 1090614v1