Josh Krevitt, #208552
jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY 10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

H. Mark Lyon, # 162061
mlyon@gibsondunn.com
Y. Ernest Hsin, # 201668
ehsin@gibsondunn.com
Stuart M. Rosenberg, # 239926
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Rd.
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:13-cv-4134-VC (JCS)<br><br>**APPLE INC.'S MOTION IN LIMINE #3 TO EXCLUDE INFORMATION AND ARGUMENTS REGARDING UNRELATED APPLE LITIGATIONS AND UNRELATED SETTLEMENT AGREEMENTS**<br><br>**Judge: Hon. Vince Chhabria** |

## I.   MATERIALS FROM UNRELATED APPLE LITIGATIONS SHOULD BE EXCLUDED UNDER FED. R. EVID. 403

This court should exclude any evidence or argument concerning Apple's unrelated litigation with Samsung (*Apple v. Samsung*, No. 12-0630 (N.D. Cal.) because its potential for prejudice greatly outweighs its relevance[1]: the *Samsung* materials from which Unwired Planet ("UP") selectively quotes throughout its damages expert report deal with issues that are substantially unrelated to this case. *Samsung* involved *different* accused products and *different* patented inventions that bear no relationship to those in this case; it also involved a *different* and completely unrelated party (Samsung), which is Apple's direct market competitor. Accordingly, any reference to *Samsung* should be excluded because it will serve only to confuse and mislead the jury, and is entirely irrelevant to the issues in this lawsuit. *See* Fed. R. Evid. 403; *Odetics, Inc. v. Storage Technology Corp.*, 185 F.3d 1259, 1276 (Fed. Cir. 1999) (affirming exclusion of evidence of prior litigation which lacked probative value and would likely confuse jury); *Baker v. Delta Air Lines, Inc.*, 6 F.3d 632, 643 (9th Cir. 1993) (affirming exclusion where side issues and debates over evidence "might have consumed considerable time and distracted the jury").[2]

### A.   The Patents, Technologies, and Accused Features at Issue in *Samsung* Were Completely Different From the Ones in this Case

UP cannot show that Apple's and Samsung's patents and technologies at issue in *Samsung* bear any relation to UP's patents and technologies at issue here.[3] This strongly mediates against any affirmative introduction of the *Samsung* materials as evidence.[4]

---

[1] For the same reasons set forth herein, the court should likewise exclude any evidence or argument concerning Apple's unrelated litigations with any other third parties as well, including but not limited to Opti Inc., MobileMedia Ideas, Mobile Telecommunications Technologies, and Smartflash (for which Unwired Planet has recently identified new trial exhibits), because their potential for prejudice similarly outweighs any possible relevance.

[2] To the extent Unwired Planet argues that it should be permitted to use the Samsung materials for impeachment, Apple respectfully requests that the Court consider that case-by-case.

[3] In fact, UP has not even alleged – let alone demonstrated through a technical analysis – that the patents at issue in *Samsung* are technically comparable to the UP patents at issue here. While Apple did assert a patent in *Samsung* that Apple contends is practiced by Siri, it did not pertain to speech recognition or transcription, but rather to a universal interface for retrieving information – which is irrelevant to this case. Order Granting Prelim. Injunct, *Apple v. Samsung*, No. 12-0630, D.I. 222 at 7, 81 (June 29, 2012). Further, unlike Apple's

[Footnote continued on next page]

While UP is poised to introduce evidence of Apple's reasonable royalty analysis from *Samsung* (*see* Expert Report of Robert Mills ("Mills Report") ¶¶ 368, 375, 409, 441),[5] that royalty analysis flowed entirely from the scope and value of *Samsung's* infringement of *Apple's* asserted patents.  That is entirely unrelated to the scope, and the value, of UP's patents here. Requiring Apple to explain this distinction and contextualize this will simply confuse and mislead a jury and waste time.  In addition, it may skew the jury's perceptions of appropriate damages and lead it to "anchor" the royalty here based on the royalty Apple sought for completely unrelated patents in *Samsung*.  The Federal Circuit has recognized the danger of permitting the jury to hear evidence that is unrelated to the facts of the case.  *See Uniloc USA v. Microsoft Corp.*, 632 F.3d 1292, 1320 (Fed. Cir. 2011) (recognizing the permitting the jury to hear evidence of the accused product's revenue risks "skew[ing] the damages horizon"); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1333 (Fed. Cir. 2014) (finding that the use of evidence that is "unjustified by evidence about the particular facts provides a baseline from which juries might hesitate to stray, even if the evidence supported a radically different split").[6]

---

[Footnote continued from previous page]
argument regarding its patents in *Samsung*, UP has never alleged that its asserted patents are 'blocking patents' which must be licensed in order to develop the accused features.

[4] Indeed, courts in this district have routinely excluded such materials.  *See, e.g.*, Pretrial Order Re Motion in Limine, *GPNE Corp. v. Apple, Inc.*, No. 12-cv-02885, at 1 (N.D. Cal. June 24, 2014) [Dkt. 319] (precluding plaintiff from offering evidence or argument concerning other Apple litigation); Order on Motions-in-Limine, *Golden Bridge Tech. v. Apple, Inc.*, No. 12-cv-04882, at 6 (N.D. Cal. May 16, 2014) [Dkt. 469] (same); Order on Pre-trial Motions, *Emblaze Ltd. v. Apple Inc.*, No. 11-cv-01079, at 3 (N.D. Cal. June 18, 2014) [Dkt. 519] (same). *See also NetAirus Techs., LLC v. Apple Inc.*, No. 2:10-cv-03257, D.I. 523 at 2 (C.D. Cal., Oct. 21, 2013) (*granting* motion *in limine* to exclude unrelated Apple litigations).

[5] Mr. Mills cites *Samsung* in his analysis of the commercial success, popularity, and benefits of the accused features (Georgia-Pacific factors 8 and 10), but given the complete lack of overlap in the features and devices of the accused Samsung products in *Samsung* and the accused Apple features here, the *Samsung* evidence is irrelevant to UP's claims.  Mills Report ¶¶ 255, 315, 334, 336, 347-348.

[6] UP also is poised to rely on *Samsung* when rebutting Apple's proposed non-infringing alternatives.  *See, e.g.*, Mills Report ¶ 262.  Apple's arguments about the merits of Samsung's proposed non-infringing alternatives to the patents Apple asserted in *Samsung* are unrelated to the acceptability of non-infringing alternatives for the patented inventions at issue here. Thus, presentation of this evidence in this case would be confusing and a waste of time.

1

2

**B.      The Nature of the Damages Case in *Samsung* Hinged on Samsung's Unique Role as Apple's Direct Market Competitor**

3

The *Samsung* materials are also irrelevant and highly prejudicial here because, unlike UP,

4

Samsung is Apple's direct competitor in the smartphone market and the damages analysis in

5

*Samsung* was inextricably tied to how Apple's and Samsung's sales of competing products

6

affected each other's business.  UP, on the other hand, is a non-practicing entity that has never

7

competed with Apple.  This in itself undermines Mr. Mills' reliance on the *Samsung* damages

8

analysis in several respects, and shows that UP's selective references to *Samsung* would mislead

9

the jury.

10

First, as mentioned above, Mr. Mills' references to Apple's royalty calculation in

11

*Samsung* invite the jury to make an improper comparison with UP's royalty demands here.

12

While UP, as a non-practicing entity, merely seeks to monetize its patent portfolio, Apple and

13

Samsung demanded far higher royalties from one another because they were licensing their

14

patents to a direct competitor.  Likewise, and particularly because Apple was initially successful

15

at obtaining a preliminary injunction in *Samsung*, Apple sought a higher royalty from Samsung

16

to compensate it for Samsung's "copycat" products remaining on the market – which Apple

17

contended directly affected Apple's sales.  Forcing Apple to explain this in order to rebut UP's

18

selective use of the *Samsung* materials will only confuse the jury and delay these proceedings.

19

The Federal Circuit has recognized the risk of jury confusion resulting from "exposing the jury

20

to another judge's statements on the law" or of the application of law to the facts of another case.

21

*Mendenhall v. Cedarapids*, 5 F.3d 1557, 1574-75 (Fed. Cir. 1993).

22

Second, UP is poised to introduce selective quotations of Apple witnesses in *Samsung*

23

regarding "stickiness" (the propensity of a smartphone buyer to "stick" with a particular brand

24

for subsequent purchases) and switching costs (e.g., lost access to apps) in order to suggest that

25

Apple would have paid more for a license to UP's asserted patents since Apple would have lost

26

customers if its products lacked the accused features.  Mills Report ¶¶ 221-232.  Yet, unlike

27

Samsung, UP has no product that Apple's customers could hypothetically defect to, making this

28

argument meritless.[7]  Mr. Mill's arguments regarding the value of the accused features to first-time smartphone buyers in *Samsung* are baseless for the same reasons.

Third, Mr. Mills cites *Samsung* litigation in his discussion of convoyed sales, but UP's reasonable royalty demands in this case do not factor in any convoyed sales *at all*.  *See* Mills Report ¶¶ 234-240.  Allowing Mr. Mills to reference the *Samsung* litigation on this point would require Apple to rebut that testimony and evidence, all on issues that UP concedes have no place in this trial.  *See Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (noting that damages analysis must be tailored towards the type of damages sought).[8]  For these reasons, the *Samsung* materials should be excluded under Rule 403.

C.       **The *Samsung* materials should be excluded as inadmissible hearsay evidence**

Independent of Rule 403, the court's decisions and orders from *Samsung* are inadmissible hearsay, and judicial opinions and judicial fact-finding do not fall under the public records exception to the hearsay rule.  *See, e.g.*, *United States v. Sine*, 493 F.3d 1021, 1036 (9th Cir. 2007).  Likewise, the deposition, trial testimony, or affidavits of any witness from *Samsung* constitute out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay.  Unwired Planet had ample opportunity to depose Apple witnesses in this case and ask them whatever it wanted, and should not now permitted to introduce deposition or trial testimony or declarations from *Samsung* during its case in chief. Moreover, the expert reports from *Samsung* also constitute inadmissible hearsay and do not fall within any exception to the hearsay rule; for example, they do not constitute party admissions by Apple.  *See, e.g.*,

---

[7]  There is further no evidence that any Apple competitor had licensed UP's asserted patents and included the accused features in their own smartphones at the time of the hypothetical negotiation.  Stickiness is thus not at issue here, because there is *no evidence that there was an available alternative* for a customer that wanted to purchase a device with the accused features and wouldn't purchase an Apple product that lacked them.

[8]  UP's use of the *Samsung* materials will also greatly prejudice Apple because UP intends to use them to attack the integrity of Apple's counsel (who also represented Apple in the *Samsung* case), as UP did during the deposition of Apple's employee Kurt Knight.  *See* Knight Dep. at 27:1-28:7 (asking Mr. Knight to confirm that Apple's counsel's statements regarding Siri's release in Apple's Motion for a Preliminary Injunction were "not true and . . . over the top.")

1   *Wilson v. Hartford Ins. Co. of the Midwest*, No. 10-cv-993, 2011 WL 2670199, at *2 (W.D.

2   Wash. July 7, 2011) ("[Plaintiff] is mistaken in his belief that a party's expert's report is

3   equivalent to a party's admission within the meaning of Fed. R. Evid. 801(d)(2).  An expert is

4   expected to form her own opinions, not the opinions of the party who hired her.")

### D.    The Court Should Exclude the SimpleAir Settlement and Any Expert Testimony Relying on It Under Rule 403

6          The Court should also exclude any evidence or argument concerning the SimpleAir

7   litigation (*SimpleAir, Inc., v. AWS Convergence Technologies, Inc., et al.*, No. 2:09-cv-289 (E.D.

8   Tex.)), including the Apple / SimpleAir settlement, under Rule 403.  First, evidence relating to

9   *SimpleAir* should be excluded because that case dealt with different patents, and thus its

10  probative value in this case is low.  Admitting the SimpleAir settlement, and permitting UP's

11  expert to rely on it, creates a substantial risk of unfair prejudice to Apple and a high likelihood of

12  confusing or misleading the jury as to the meaning or evidentiary weight of the settlement

13  agreement.  Indeed, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, the Federal Circuit held

14  that "[t]he propriety of using prior settlement agreements to prove the amount of a reasonable

15  royalty is questionable," and that "license fees that are tainted by the coercive environment of

16  patent litigation are unsuitable to prove a reasonable royalty." 694 F.3d 51, 77 (Fed. Cir. 2012).

17  Given the "limited circumstances" under which reliance on a settlement agreement to establish a

18  reasonable royalty is permissible, UP's reliance on the SimpleAir settlement alone – which

19  concerned a different patent *not* asserted in this case – to support its damages theory will mislead

20  the jury and greatly prejudice Apple.  *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 144

21  (D. Del. 2013) ("[A] single settlement agreement on a different patent without any analysis of

22  the settlement context is not a reliable method for calculating damages.").

23          Further, because the settlement agreement itself should be excluded, as set out above,

24  UP's expert Mr. Mills should likewise be prohibited from relying on it at trial.  *See* Fed. R. Evid.

25  703 ("[I]f the facts or data" on which an expert bases his opinion "would otherwise be

26  inadmissible, the proponent of the opinion may disclose them to the jury only if their probative

27  value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.").

28

**II.     CONCLUSION**

For the foregoing reasons, Apple respectfully asks the Court to exclude any evidence, testimony, or argument concerning Apple's unrelated litigations including without limitation, those with Samsung, SimpleAir, Opti Inc., MobileMedia Ideas, Mobile Telecommunications Technologies, and Smartflash, because their potential for prejudice similarly outweighs any possible relevance, including any references to the settlement agreement between Apple and SimpleAir.

Dated:  April 22, 2015.

By: */s/ Y. Ernest Hsin*

Josh Krevitt
jkrevitt@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Ave.
New York, NY  10166-0193
Telephone:  212.351.4000
Facsimile:  212.351.4035

H. Mark Lyon
mlyon@gibsondunn.com
Y. Ernest Hsin
ehsin@gibsondunn.com
Stuart Rosenberg
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Rd.
Palo Alto, CA  94304-1211
Telephone:  650.849.5300
Facsimile:  650.849.5333

*Attorneys for Defendant Apple Inc.*

1

## <u>CERTIFICATE OF SERVICE</u>

2      The undersigned hereby certifies that the foregoing document was filed electronically in

3 compliance with Civil L.R. 5.4, and will be served upon all counsel of record for the parties who

4 have consented to electronic service in accordance with Civil L.R. 5.4 via the Court's ECF system.

5
Dated:  April 22, 2015            By: <u>*/s/ Y. Ernest Hsin*</u>
6                                          Y. Ernest Hsin
                                           GIBSON, DUNN & CRUTCHER LLP
7
                                           *Attorney for Defendant Apple Inc.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Courtland L. Reichman
   SBN 268873
2  creichman@mckoolsmith.com
   MCKOOL SMITH HENNIGAN, P.C.
3  255 Shoreline Drive, Suite 510
   Redwood Shores, CA 94065
4  Telephone: (650) 394-1400
   Fax: (650) 394-1422
5
   Theodore Stevenson III
6  Texas State Bar No. 19196650
   tstevenson@mckoolsmith.com
7  300 Crescent Court, Suite 1500
   MCKOOL SMITH, P.C.
8  Dallas, Texas 75201
   Telephone: (214) 978-4000
9  Fax: (214) 978-4044

10 Kevin Burgess
   Texas State Bar No. 24006927
11 kburgess@mckoolsmith.com
   John B. Campbell
12 Texas State Bar No. 24036314
   jcampbell@mckoolsmith.com
13 MCKOOL SMITH, P.C.
   300 W. 6th St., Suite 1700
14 Austin, Texas 78701
   Telephone: (512) 692-8700
15 Fax: (512) 692-8744

16 *Attorneys for Plaintiff*

17                    UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                      SAN FRANCISCO DIVISION

20
   UNWIRED PLANET LLC, a Nevada limited          )   Case No. 3:13-cv-4134-VC (JCS)
21 liability company,                            )
                                                 )   UNWIRED PLANET'S RESPONSE
22                          Plaintiff,           )   TO APPLE INC.'S MOTION IN
                                                 )   LIMINE #3 TO EXCLUDE
23          v.                                   )   INFORMATION AND
                                                 )   ARGUMENTS REGARDING
24 APPLE INC., a California corporation,         )   UNRELATED SETTLEMENT
                                                 )   AGREEMENTS
25                          Defendant.           )
                                                 )
26                                               )   JUDGE: Hon. Vince Chhabria
                                                 )
27 _____

28

MCKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CA

McKool Smith Hennigan, P.C.
Redwood Shores, CA

## I. EVIDENCE FROM *APPLE V. SAMSUNG* SHOULD NOT BE EXCLUDED—IT IS RELEVANT, NOT UNDULY PREJUDICIAL, AND NOT HEARSAY

Evidence from *Apple, Inc. v. Samsung Electronics Co.* (the "Samsung evidence") is highly relevant and Apple points to no legitimate basis for exclusion.[1] Indeed, in the *Samsung* case itself, the court denied Apple's motion to preclude testimony about opinions of Apple's experts from past cases. *See Apple, Inc. v. Samsung Elec. Co., Ltd.,* No. 12-CV-630, 2014 U.S. Dist. LEXIS 24506, at *54-59 (N.D. Cal. Feb. 25, 2014) ("*Apple II*"). There the court reasoned:

> [T]he probative value of such testimony is not substantially outweighed by any speculative danger of 'confusing the issues' or 'misleading the jury.' Fed. R. Evid. 403. As discussed above, the past methodologies of Apple's experts are highly probative impeachment evidence that a fact-finder will consider in assessing the weight a fact-finder may choose to give to the experts in the instant litigation. Moreover, Apple's concerns about jury confusion and wasting time are unpersuasive.

*Id.* at *57-58. Here too, Apple's motion should be denied.[2]

### A. The *Samsung* Evidence Is Highly Relevant In This Case

Apple seeks to prevent the jury from considering highly relevant evidence from *Samsung* that goes to the core of Apples' damages arguments, including the expert reports and testimony rendered by Apple's damages expert, Dr. Vellturo, and Apple's survey expert, Dr. Hauser, in its litigation with Samsung.[3] Unwired Planet's damages expert, Mr. Mills, relies on Apple's arguments and the opinions of its experts in the *Samsung* litigation to (1) qualitatively evaluate the economic effects of Apples' infringement ; (2) in support of his use of the doctrine of "revealed preference" in evaluating non-infringing alternatives; and (3) support his determination of a running royalty. *See* Dkt. 328-28. Mr. Mills does not, as Apple asserts, rely on the total amount of "Apple's royalty calculation" in the *Samsung* litigation. Additionally, Unwired Planet may use *Samsung* evidence to demonstrate the

---

[1] Unlike in *Samsung* and unlike here, in *GPNE Corp. v. Apple, Inc.*, the court observed that GPNE "provided no basis for the admissibility of any evidence regarding other proceedings. . ." The *Golden Bridge* and *Emblaze* orders cited by Apple provide no explanation for their reasoning—it is unclear whether the plaintiffs there presented any basis for the admissibility prior Apple litigation.
[2] Apple also seeks to exclude evidence of its prior patent infringement litigations against *Opti Inc.*, *MobileMedia Ideas*, *Mobile Telecommunications Technologies*, and *Smartflash*. To the extent that Apple makes any arguments regarding a corporate policy of not infringing, a clear record of innovation and not infringing, etc., evidence of its prior liability for infringement will be relevant.
[3] Apple argues lack of relevance without acknowledging that the Court concluded that the Samsung evidence is relevant according to the discovery standards. *See* Dkt. 252; Ex. B at 3-5.

-1-

1   reasonableness of the survey conducted by its survey expert, Dr. Greg Allenby.

2        Mr. Mills considers and relies upon the opinions of Dr. Vellturo in the *Samsung* litigation, as

3   well as Apple employees who offered deposition testimony. *See, e.g.*, Dkt. 323-28 at 39, 124-132.

4   Dr. Vellturo offered opinions ████████████████████████████████████████████████

5   ████████████████████████████████████ *See, e.g.,* Ex. C at 147; Dkt. 323-28 at 39. For

6   example, Dr. Vellturo opined that ██████████████████████████████████████████████

7   ████████████████████████████████████████████████████████████████████████████████

8   ████████████████████████████████████████████████████████████████████████████████

9   ██████████████████████████████. *See* Ex. C at 147; Dkt. 323-28 at 39-40. These ████

10  ████████████████████████████████████████████████████████████████████. Dkt.

11  323-28 at 39. More specifically, Dr. Vellturo ████████████████████████████████████

12  ████████████████████████████████████████████████████████████████████████████████

13  ████. This evidence is relevant to Mr. Mills' conclusions regarding the value of the benefits of the

14  '260 patent, which enables provisioning content purchased from the App Store to the iPhone and

15  other Apple devices.

16        Mr. Mills applies the doctrine of revealed preferences in his evaluation of Apple's asserted

17  non-infringing alternatives. Dkt. 323-28 at 140-141. In *Samsung*, Dr. Vellturo ███████████

18  ████████████████████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████████████████████

20  ██████████████████████████████████████████████████. *See id*. Mr. Mills

21  also relies on Apple's request for running royalty damages in the *Samsung* litigation to conclude

22  Unwired Planet and Apple would have agreed on a running royalty in the hypothetical negotiation.

23  Dkt. 323-28 at 234-235. Unwired Planet should be allowed to discuss both the fact that Apple sought

24  a per-unit running royalty and the per-unit running royalty amount that Apple sought. *See id*.

25        In *Samsung*, Dr. Hauser conducted a conjoint survey in order to evaluate consumer demand

26  for the features enabled by the invention. *See id*.; Ex. A at 5, ¶7. Likewise, in this case Dr. Allenby

27  conducted a conjoint survey to evaluate consumer demand for the features enabled by the invention.

28

McKool Smith Hennigan, P.C.
Redwood Shores, CA

Case No. 3:13-cv-4134-VC (JCS)                    **UNWIRED PLANET'S RESPONSE TO MIL #3**

McKool 1090614v1

1    *See* Dkt. 323-12 at 5. Apple and its survey expert in this case, Dr. Weber, criticize the methodology

2    and assumptions that Dr. Allenby applied in his conjoint survey. *See* Dkt. 318 at 4-9; Dkt. 323-1. But

3    Dr. Allenby applied the same methodology and many of the same assumptions that Apple and Dr.

4    Hauser applied—and vigorously defended—in the *Samsung* litigation. *See* Dkt. 323-4 at 3-5; Dkt.

5    323-12 at 9; *Apple II.,* 2014 U.S. Dist. LEXIS 24506, at *59-89. Thus, evidence regarding Apple and

6    Dr. Hauser's conjoint survey analysis in *Samsung* will be important for Unwired Planet and Dr.

7    Allenby to deflect Apple's criticisms of its conjoint survey.

8         **B.    The *Samsung* Evidence Will Not Cause Unfair Prejudice or Juror Confusion**

9              1.    *The iPhone, iPad, Siri, and the App Store Are At Issue Here and In Samsung*

10        Apple first tries to exclude "evidence or argument concerning" the *Samsung* litigation on the

11   grounds that it involved "completely different" patents, technology, and accused features. But, as

12   Apple fails to note, many of the Apple *products* (*e.g.*, the iPhone and iPad) and specific features

13   (*e.g.*, the App Store) at issue in the *Samsung* case are accused in this case. The evidence that Apple

14   presented in *Samsung* regarding the commercial success, value propositions, and key features of

15   those products is relevant here. *Georgia-Pacific* factor 8 explicitly requires that damages experts

16   consider the commercial success of the accused product.[4] Apple's arguments regarding *Uniloc* and

17   *VirnetX* attempt to conflate the rules of apportionment with the simple issue of whether Mr. Mills

18   may testify about his consideration of *qualitative* evidence regarding the success of the accused

19   products in his uncontroversial *qualitative Georgia-Pacific* analysis.

20        Mr. Mills relies on the *Samsung* evidence in his qualitative (rather than quantitative) damages

21   analysis. Neither Mr. Mills nor Unwired Planet will rely upon or raise the total amount of damages

22   that Apple sought from Samsung. Thus, *Uniloc* concerns are moot. The fact that Apple seeks to

23   preclude Unwired Planet from *any* use of the *Samsung* evidence, as opposed to a narrowly tailored

24   motion in limine regarding the total amount of damages sought in the *Samsung* case, such as the one

25   that Apple agreed to in the *Smartflash* case, reflects that Apple is over-reaching in its motion in

26   limine. *See* Ex. D, *SmartFlash LLC v. Apple, Inc.*, No.  6:13-CV-447, at 4 (E.D. Tex. Jan. 29, 2015).

27

28   _____
     [4] *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).

**3**

**McKool Smith Hennigan, P.C.**
Redwood Shores, CA

McKool Smith Hennigan, P.C.
Redwood Shores, CA

2.     *The Jury Will Have No Trouble Understanding that Samsung Is a Competitor*

Apple will no doubt be able to communicate to the jury the concept that Samsung is an Apple competitor and Unwired Planet is not. There is absolutely nothing complicated or confusing about that simple fact. It is difficult to imagine that a jury will be "misled" into overlooking that Samsung is an Apple competitor and Unwired Planet is not—especially in light of the fact that Mr. Mills himself acknowledges as much. *See* Dkt. 323-28 at 118-119. Apple's argument that the *Samsung* evidence should be discounted on the basis of Samsung's competitive relationship with Apple—in contrast to the absence of a competitive relationship between Unwired Planet and Apple—presents a classic question of weighing the evidence for the jury. It does not warrant exclusion. Apple argues that because Mr. Mills considers the effect of convoyed sales based on the *Samsung* evidence, but does not ultimately factor convoyed sales into his quantitative calculation of damages, the *Samsung* evidence regarding convoyed sales should be excluded. This logic would suggest exclusion of any damages evidence not utilized as a direct input into a calculation of a damages amount. Such reasoning contravenes *Georgia Pacific* and countless cases recognizing the importance of considering qualitative as well as quantitative evidence in a damages analysis.

**C.     The *Samsung* Evidence Should Not Be Excluded *In Limine* On Hearsay Grounds**

Apple lastly argues for exclusion of the *Samsung* evidence by asserting that it is "inadmissible hearsay." The *Samsung* evidence consists of statements made directly by Apple itself in the lawsuit or by its agents, and would thus be non-hearsay admissions of a party opponent under Rule 801(d)(2). The *Samsung* evidence further is admissible under Rule 801(d)(2)—statements offered against Apple that Apple "adopted or believed to be true."[5]

Regardless, even if the *Samsung* evidence is deemed to be hearsay, Rule 703 permits experts to rely on hearsay evidence. *See* Fed. R. Evid. 703. The expert may discuss such evidence at trial so

---

[5] *See, e.g., Pfizer Inc. v. Teva Pharms. USA, Inc.*, 2006 U.S. Dist. LEXIS 77970, at *(D.N.J. Oct. 26, 2006) ("Teva argues that the [expert] affidavits are admissible under section (B) of Rule 801(d)(2), known as the 'adoptive admission'rule, because Pfizer manifested an adoption or belief in the truth of the affidavits by relying on them in the briefs it submitted . . . The Court agrees."); *In re Chicago Flood Litig.*, 1995 U.S. Dist. LEXIS 10305, at *35 (N.D. Ill. July 21, 1995) ("A party's expert reports often constitute party admissions pursuant to Fed. R. Evid. 801(d)(2). Evidence that plaintiffs or their experts themselves agree with aspects of the city's case is strongly probative.").

4

1   long as its "probative value in helping the jury evaluate the opinion substantially outweighs their

2   prejudicial effect" or in response to "an adversary's attack on [the] expert's basis" that opens the

3   door to the underlying evidence. *See id*. at Advisory Committee Notes (2000 Amendments); Fed. R.

4   Evid. 807. Here, the probative value of the *Samsung* evidence will outweigh any prejudicial effect.

5   Indeed, there is no undue prejudice to Apple. Apple does not and cannot claim that the *Samsung*

6   evidence—sworn reports and testimony by its experts in the hotly contested trial against *Samsung*—

7   have not been sufficiently vetted or tested so as to be reliable. Apple does not deny that the Vellturo

8   report, the Hauser report, and the other *Samsung* evidence accurately set forth their opinions. Nor

9   does Apple dispute that it adopted and endorsed its experts' opinions in the *Samsung* litigation.

10  ## II.    MR. MILLS' DAMAGES ANALYSIS PROPERLY RELIES ON SIMPLEAIR

11          Apple's motion in limine regarding the SimpleAir litigation merely rehashes its meritless

12  *Daubert* arguments. *See* Dkt.318 at 13-15. As Unwired Planet argued in response to Apple's

13  *Daubert* motion, reliance on the SimpleAir agreement is entirely appropriate in light of (1) the

14  technical comparability of the patents at issue in SimpleAir and in this case and (2) the economic

15  similarities between the circumstances of the SimpleAir agreement and the hypothetical negotiation

16  in this case. *See* Dkt. 323-4 at 13-15. Apple argues that the SimpleAir agreement should be excluded

17  because it is a settlement agreement that covers different patents. But the Federal Circuit permits

18  reliance on comparable agreements regarding different patents.[6] Unwired Planet's technical expert

19  and Apple's own Director of Engineering have concluded that the patents at issue in SimpleAir and

20  the patents-in-suit here are technically comparable. *See* Dkt. 323-4 at 14-15; Dkt. 323-28 at 113;

21  Dkt. 313-7 at 100; Dkt. 323-46 at 167-71. Additionally, unlike in *AVM Technologies*, Mr. Mills

22  carefully evaluated the circumstances of the SimpleAir litigation that led to the settlement

23  agreement. Dkt. 323-28 at 112-16, 201-211; Dkt. 323-44 at 13-15; Dkt. 323-30 at 75:19-76:17,

24  77:24-78:10. His analysis showed that, unlike in *LaserDynamics*, the circumstances of the agreement

25  demonstrate the reliability of the SimpleAir agreement.

26

27  [6] *See Open Text S.A. v. Box, Inc.*, 2014 U.S. Dist. LEXIS 50581, at *17 (N.D. Cal., Jan. 29, 2015)
    *Conceptus, Inc. v. Hologic, Inc.*, C 09-02280, 2011 U.S. Dist. LEXIS 109965, at *10-11 (N.D. Cal.

28  Sept. 27, 2011) (denying motion in limine seeking to exclude settlement license agreement).

McKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CA

1 | DATED:      May 1, 2015                    McKool Smith Hennigan, P.C.

2

3
                                             By /s/ Courtland L. Reichman
4                                            Courtland L. Reichman (SBN 268873)
                                             creichman@mckoolsmithhennigan.com
5                                            MCKOOL SMITH HENNIGAN, P.C.
                                             255 Shoreline Drive, Suite 510
6                                            Redwood Shores, CA 94065
                                             Telephone:    (650) 394-1400
7                                            Facsimile:     (650) 394-1422

8                                            Theodore Stevenson III
                                             Texas State Bar No. 19196650
9                                            tstevenson@mckoolsmith.com
                                             Mitchell R. Sibley
10                                           Texas State Bar No. 24073097
                                             msibley@mckoolsmith.com
11                                           MCKOOL SMITH, P.C.
                                             300 Crescent Court, Suite 1500
12                                           Dallas, Texas 75201
                                             Telephone:    (214) 978-4000
13                                           Fax:           (214) 978-4044

14                                           Kevin Burgess
                                             Texas State Bar No. 24006927
15                                           kburgess@mckoolsmith.com
                                             John B. Campbell
16                                           Texas State Bar No. 24036314
                                             jcampbell@mckoolsmith.com
17                                           Kevin Kneupper
                                             Texas State Bar No. 24050885
18                                           kkneupper@mckoolsmith.com
                                             James E. Quigley
19                                           Texas State Bar No. 24075810
                                             jquibley@mckoolsmith.com
20                                           Mario A. Apreotesi
                                             Texas State Bar No. 24080772
21                                           mapreotesi@mckoolsmith.com
                                             MCKOOL SMITH, P.C.
22                                           300 W. 6th St., Suite 1700
                                             Austin, Texas 78701
23                                           Telephone:    (512) 692-8700
                                             Fax:           (512) 692-8744
24

25                                           *ATTORNEYS FOR PLAINTIFF UNWIRED
                                             PLANET LLC*
26

27

28
                                          6
Case No. 3:13-cv-4134-VC (JCS)                    UNWIRED PLANET'S RESPONSE TO MIL #3
McKool 1090614v1

1   Courtland L. Reichman
    SBN 268873
2   creichman@mckoolsmith.com
    MCKOOL SMITH HENNIGAN, P.C.
3   255 Shoreline Drive, Suite 510
    Redwood Shores, CA 94065
4   Telephone: (650) 394-1400
    Fax: (650) 394-1422
5
    Theodore Stevenson III
6   Texas State Bar No. 19196650
    tstevenson@mckoolsmith.com
7   300 Crescent Court, Suite 1500
    MCKOOL SMITH, P.C.
8   Dallas, Texas 75201
    Telephone: (214) 978-4000
9   Fax: (214) 978-4044

10  Kevin Burgess
    Texas State Bar No. 24006927
11  kburgess@mckoolsmith.com
    John B. Campbell
12  Texas State Bar No. 24036314
    jcampbell@mckoolsmith.com
13  MCKOOL SMITH, P.C.
    300 W. 6th St., Suite 1700
14  Austin, Texas 78701
    Telephone: (512) 692-8700
15  Fax: (512) 692-8744

16  *Attorneys for Plaintiff*

17                  UNITED STATES DISTRICT COURT

18                  NORTHERN DISTRICT OF CALIFORNIA

19                  SAN FRANCISCO DIVISION

20
    UNWIRED PLANET LLC, a Nevada limited          Case No. 3:13-cv-4134-VC (JCS)
21  liability company,
                                                  KEVIN KNEUPPER'S
22                        Plaintiff,              DECLARATION IN SUPPORT OF
                                                  UNWIRED PLANET'S RESPONSE
23              v.                                TO APPLE INC.'S MOTION IN
                                                  LIMINE #3 TO EXCLUDE
24  APPLE INC., a California corporation,         INFORMATION AND
                                                  ARGUMENTS REGARDING
25                        Defendant.              UNRELATED SETTLEMENT
                                                  AGREEMENTS
26

27                                               JUDGE: Hon. Vince Chhabria

28                                          -1-
    Case No. 3:13-cv-4134-VC (JCS)              KNEUPPER DECLARATION IN SUPORT OF
                                                UNWIRED PLANET'S RESPONSE TO MIL #3

MCKOOL SMITH HENNIGAN, P.C.
REDWOOD SHORES, CA

McKool 1090614v1

McKool Smith Hennigan, P.C.
Denwonn Stonce CA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Kevin Kneupper, declare as follows:

1.　　I am a principal at McKool Smith P.C., counsel of record for Plaintiff Unwired Planet LLC ("Unwired") in this matter.  I make this declaration in support of Unwired Planet's Response to Motion in Limine #3.

2.　　Attached hereto as Exhibit A is a true and correct copy of excerpts from the expert report of John R. Hauser.

3.　　Attached here to as Exhibit B is a true and correct copy of excerpts from the October 9, 2014 hearing transcript regarding motion to amend infringement contentions.

4.　　Attached hereto as Exhibit C is a true and correct copy of excerpts from Opening Expert Report of Christoper A. Vellturo, Ph.D.

5.　　Attached hereto as Exhibit D is a true and correct copy the January 29, 2015 Order regarding Motions *in Limine* from *Smartflash LLC v. Apple Inc*.

I declare under penalty and perjury under the laws of the State of California and the United States that the foregoing is true and correct.  Executed May 1, 2015, in Austin, Texas.

**Kevin Kneupper**

**Case No. 3:13-cv-4134-VC (JCS)**　　　　2　　KNEUPPER DECLARATION IN SUPORT OF
UNWIRED PLANET'S RESPONSE TO MIL #3

McKool 1090614v1

# EXHIBIT A

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| APPLE INC., a California corporation, | Case No. 12-cv-00630 |
| Plaintiff, | **EXPERT REPORT OF JOHN R. HAUSER,** |
| v. | **August 11, 2013** |
| SAMSUNG ELECTRONICS CO., LTD., A Korean corporation; SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation; SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company, | |
| Defendants. | |

**\*\*CONFIDENTIAL – CONTAINS MATERIAL DESIGNATED AS CONFIDENTIAL –**

**PURSUANT TO A PROTECTIVE ORDER\*\***

**UNITED STATES DISTRICT COURT**

CONFIDENTIAL - ATTORNEYS' EYES ONLY

scenarios, to measure the importance and value of product features, to measure the impact of rumors, to evaluate marketing research with respect to advertising claims, and to investigate the potential for customer confusion.

5.      I have provided survey evidence that has been used to estimate the relative value of product features, for example, in both antitrust cases and in patent infringement cases. I have advised major corporations, including American Airlines, Chrysler Corporation, Fidelity Investments, Ford, General Motors, IBM, Polaroid, Proctor & Gamble, and Xerox. My professional qualifications are described in my curriculum vita, which is attached as Exhibit A. A list of cases in which I have testified within the last four years at deposition or trial is attached as Exhibit B.

6.      The subject area headings in this report are intended to assist the reader and no inference should be drawn from the use or omission of any wording or description in these headings.

## II.     Assignment

7.      I was asked by counsel for Plaintiff, Apple Inc. ("Apple"), to design and conduct two surveys—one for smartphones and one for tablets—to determine what effect, if any, the features associated with the patents at issue have on Samsung consumers' willingness to buy Samsung smartphones and tablets.[5] I was also asked to determine the price premium, if any, that Samsung consumers are willing to pay for the features associated with the patents at issue. For smartphones, I was asked to test the following patents: US 5,946,647 (the "'647 Patent"), US 6,847,959 (the "'959 Patent"), US 8,074,172 (the "'172 Patent"), 8,014,760 (the "'760 Patent"), and US 7,761,414 (the "'414 Patent"). For tablets, I was asked to test the following patents: US 8,046,721 (the "'721 Patent"), the '647 Patent, the '959 Patent, the '172 Patent and the '414 Patent.[6]

---

[5]   In this report, I collectively refer to Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc. and Samsung Telecommunications America, LLC as "Samsung."

[6]   I understand that the '721 Patent is alleged to be infringed by Samsung smartphones as well as Samsung tablets. In order to better balance the number of patent-related features tested in each survey, I did not test the '721 Patent for smartphones.

CONFIDENTIAL - ATTORNEYS' EYES ONLY

APL-UP_00326900

# EXHIBIT  B

Pages 1 - 58

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNWIRED PLANET, LLC,                )
                                    )
            Plaintiff,              )
                                    )
    VS.                             )        NO. C 13-04134 VC
                                    )
APPLE, INC.,                        )
                                    )
            Defendant.              )
_____)

                        San Francisco, California
                        Thursday, October 9, 2014

                **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
                        MCKOOL SMITH, P.C.
                        300 Crescent Court, Suite 1500
                        Dallas, Texas 75201
                BY:  **JOHN BRUCE CAMPBELL, JR., ESQ.**

                        MCKOOL SMITH HENNIGAN P.C.
                        255 Shoreline Drive, Suite 510
                        Redwood Shores, California 94065
                BY:  **JENNIFER PRIEB ESTREMERA, ESQ.**


For Defendant:
                        GIBSON, DUNN & CRUTCHER LLP
                        1881 Page Mill Road
                        Palo Alto, California 94304
                BY:  **ERNEST HSIN, ESQ.**



Reported By:        James C. Pence, RMR, CRR, CSR No. 13059
                    Official Court Reporter

2

```
 1  Thursday - October 9, 2014                     10:13 a.m.

 2                    P R O C E E D I N G S

 3                        ---oOo---

 4        THE CLERK:  Okay.  Calling Case No. 13-CV-4134,

 5  Unwired Planet, LLC versus Apple, Inc.

 6      Counsel, please step forward and state your appearances

 7  for the record.

 8        MS. ESTREMERA:  Good morning, Your Honor.  Jennifer

 9  Estremera and John Campbell of McKool Smith for the plaintiff

10  Unwired Planet.

11        THE COURT:  Good morning.

12        MR. HSIN:  Good morning, Your Honor.  Ernie Hsin,

13  Gibson Dunn, on behalf of Apple, the defendant.

14        THE COURT:  Good morning, Mr. Hsin.

15        MR. HSIN:  Good morning.

16        THE COURT:  Do you all want to talk about the

17  discovery issue first perhaps, or are you not prepared to do

18  that now?

19        MR. HSIN:  Which discovery issue, Your Honor?  Is that

20  the --

21        THE COURT:  The only discovery issue that I'm aware of

22  that's before me is the stuff from the Apple versus Samsung

23  litigation.

24        MR. HSIN:  Ah.  I'm happy to address it.  I had not

25  understood that we would be discussing that today, but --
```

1        **THE COURT:**  Yeah.  No, I just figured that --

2        **MR. HSIN:**  Why don't we do so, Your Honor.

3        **THE COURT:**  All right.  Well, let me -- let me

4   articulate my initial views about the -- about that dispute,

5   and I guess it's mostly, you know, directed at Apple.

6        You know, unless I'm missing something, I don't really

7   understand why they shouldn't be entitled to this information.

8   It's -- I mean, the only caveat is that, you know, my -- it

9   might be appropriate to give Samsung an opportunity to weigh in

10  since there is allegedly, you know, confidential Samsung

11  information in there.  But my understanding is that Unwired

12  wants to have that -- any confidential Samsung information

13  redacted before they -- before they get the materials.

14       So, you know, the discovery standard is, you know, I mean,

15  reasonably designed to, you know, obtain information that's

16  relevant to the litigation or that could lead to the discovery

17  of relevant evidence, and I just don't see how that standard

18  isn't met in this case.  And my -- my initial reaction is that

19  it's actually not even a close question so long as, you know,

20  any information that Samsung believes is confidential and is

21  legitimately confidential is protected.

22       So my inclination would be to, you know, invite -- invite

23  Samsung to submit something, and then, you know -- and then

24  I -- you know, it's difficult to imagine, so long as Samsung's

25  confidential information is protected, that Samsung would have,

1  you know, a dog in the fight when it comes to the

2  information -- this information being turned over.

3      So, you know, I -- I mean, do you want to say anything

4  about that now?  Do you think -- you know, am I missing

5  something?  Do you want to address my initial reaction to this

6  now?

7          **MR. HSIN:**  Sure, Your Honor.

8      And I apologize.  Again, I thought today was -- was about

9  the other --

10         **THE COURT:**  Yeah.  It's okay.

11         **MR. HSIN:**  -- motion.

12         **THE COURT:**  I'm not --

13     **MR. HSIN:**  But -- but our position -- and we put it in

14 the papers -- is that we recognize that the bar is fairly low,

15 but we don't think that they've met even that low bar.  And the

16 reason is this, is because the technologies that were at issue

17 in the Samsung case are different from the technologies here.

18 And so why is discovery about the technologies that are related

19 to that case relevant to here?

20     We feel they haven't met that threshold showing that

21 there's any relevance to this information in this proceeding.

22         **THE COURT:**  Well, I just think -- I mean, I just think

23 on its face its very likely that something would be relevant.

24 It's possible that that's wrong.  It's possible that, you know,

25 you would -- would turn over the material to Unwired and it

1    would turned out -- turn out that there's nothing particularly

2    useful for this case.

3         But, you know, the abstract possibility of that I don't

4    think argues in favor of denying the motion because I -- just

5    on the face of it, you know, a damages analysis with respect

6    to -- that addresses some of the features of the iPhone and the

7    iPad that Apple accused Samsung of infringing and that Unwired

8    now accuses Apple of infringement for.

9         I mean, there -- on the face of it, it seems very likely

10   that there would be some overlap there, and the question

11   whether any of that information would go to the jury and would

12   satisfy, you know, the standards, you know, for, you know,

13   submitting material like that to the jury is a question that

14   could be litigated at the pretrial conference.

15        But in terms of providing the information to Unwired so it

16   can conduct its own assessment of whether, you know, the

17   material that, on its face, seems likely to be relevant, I just

18   don't see what -- I don't see why that's a big deal.  So, you

19   know, that's my initial inclination, and I -- you know, I'll

20   just give some thought to process whether we want to invite

21   Samsung to weigh in on it.

22        It doesn't strike me that we need a hearing, but if you

23   all really want a hearing, you know, I'm happy to have one.

24   But that's -- you know, that's -- that's where I'm at.  That's

25   my initial thinking on that.

1        **MR. HSIN:**  And we appreciate that, Your Honor.

2        I guess one other thing I'd say is we view it as sort of

3    in the realm of -- I think you used the word "conjecture."  We

4    think it's sort of conjecture, speculation.

5        And the problem we have with their motion is that, you

6    know, they have public information that they could have made a

7    showing of "Well, this is how this is going to be relevant.

8    This is how it's going to be relevant."  They never made that

9    showing, and on the balance side of that is -- is burden.

10       Now, the burden here, as we explained, is that you've got

11   a damages analysis in that case that's very different from

12   here.  Here, there's only one accused product.  There, it was

13   sort of a bidirectional damages analysis, and we're going to

14   have to split that apart.

15       Now, I'm not saying that that's the end of the world, but

16   in weighing the burden versus a showing of relevance, I think

17   that's where we feel that it falls in favor of denying that

18   motion.

19       **THE COURT:**  Okay.  Let me ask you.  What -- I mean,

20   this isn't a super-time-sensitive thing; right?  I mean --

21       **MR. CAMPBELL:**  I wouldn't call it a

22   super-time-sensitive thing right now.  The parties' schedule,

23   which we need to submit to the Court -- we're still trying to

24   work it out -- would call for expert reports to be due

25   December 3rd.  Obviously, we would need to have enough time

1    to --

2         **THE COURT:**  For that to be analyzed.

3         **MR. CAMPBELL:**  For that to be analyzed and

4    incorporated in there.

5         **THE COURT:**  Okay.

6         **MR. CAMPBELL:**  And -- now, we don't want any Samsung

7    confidential material.  I mean, obviously, we haven't seen

8    these.  So it's difficult, but every expert report I've ever

9    seen -- it's sectioned off; right?

10        I mean, here's a discussion of Apple's products.  Here's a

11   discussion of Samsung's products.  You just redact everything

12   under the section about Samsung's products.  That's pretty --

13   in general, it would be a pretty easy thing to do.  Obviously,

14   we haven't seen these reports.

15        **THE COURT:**  Why don't you all come back for -- why

16   don't we have a case management conference on Tuesday of next

17   week.  You can do it by phone.

18        **MR. CAMPBELL:**  Okay.  Okay.

19        **MR. HSIN:**  Great.

20        **THE COURT:**  And if one side participates by phone, the

21   other side participates by phone also.

22        **MR. CAMPBELL:**  Okay.

23        **THE COURT:**  So it's not like you're at some

24   disadvantage with the other side being not in the room.

25        **MR. CAMPBELL:**  Thank you, Your Honor.

# EXHIBIT C

# EXHIBIT D

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **SMARTFLASH LLC,** *et al.,* | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CASE NO. 6:13-CV-447-JRG-KNM** |
| | § | |
| **APPLE INC,** *et al.,* | § | |
| | § | |
| **Defendants.** | § | |

## ORDER REGARDING MOTIONS *IN LIMINE*

Before the Court are Plaintiffs' Motions *in Limine* (Doc. No. 377), Apple Inc.'s ("Apple") Motions *in Limine* (Doc. No. 375), and Apple's Supplemental Motion *in Limine* (Doc. No 395). The Court held a first pretrial conference in this case January 6, 2015. On January 26, 2015, the Court held a second pretrial conference. The Court rules as follows.

### Plaintiffs' Motions *in Limine* (Doc. No. 377)

A.      Any argument, testimony, evidence, reference, or suggestion that relates to or invokes claim construction issues or otherwise undermines or collaterally attacks the Court's claim constructions, including, for example, presenting arguments or opinions inconsistent with the Court's claim constructions, presenting arguments or opinions that the claims or inventions are limited to a smart flash card, smartcard, or IC card (for example, based on preferred embodiments, company names, past company names, and commercial embodiments), presenting indefiniteness arguments or opinions based on the Court's claim construction, presenting arguments or opinions that compare or contrast the accused products to smart cards or commercial embodiments.

**GRANTED**. It is further **ORDERED** that Plaintiffs notify Apple whether copying will be in the case at least forty-eight hours before trial.

B.      Any argument, testimony, evidence, reference, or suggestion that Smartflash does not
        own the patents in suit or that Smartflash does not have the right to sue Apple for
        patent infringement.

        **CARRIED** pending resolution of the issue of standing by the Court.

C.      Any use, for any purpose, of any prior art references not among Defendants' final
        elected references.

        **GRANTED**.  This Motion *in Limine* does **not** preclude experts from opining
        generally about the state of the art.  During argument on this Motion, the parties
        raised a dispute over Stephen Ansel testifying as to prior art.  After hearing further
        argument on the issue, the Court **ORDERS** that Mr. Ansel's testimony is limited to
        the four corners of his prior art patent, and he shall **not** testify as to particular
        embodiments.

D.      Any argument, testimony, evidence, or reference concerning Apple's licenses to the
        prior art or concerning Apple's own patents.

        **GRANTED**.  This Motion *in Limine* does **not** preclude Apple from testifying
        generally regarding Apple's ownership of patents and licenses.

E.      Any argument, evidence, testimony, or reference that Smartflash or any of its
        investors is a "shell company," "shell corporation," or "trust," or any insinuation that
        any trusts or other aspects of Smartflash's corporate structure are suspicious or
        improper," or any argument, evidence, testimony, or reference to Apple's job
        creation in the United States.

        **GRANTED** subject to the parties' agreement that Apple will not refer to Smartflash
        as a shell company or similar and Plaintiffs will not discuss Apple's own corporate
        structure or patent assertion practices.  Apple also agreed to limit its discussion of
        job creation to the number of its employees in the U.S., abroad, and in Texas.  This
        Motion *in Limine* does **not** preclude Apple from discussing these facts about
        Smartflash: (1) when Smartflash opened its Tyler office; (2) when Smartflash filed
        suit; and (3) whether Smartflash makes a product.  Apple shall **not** argue that
        Smartflash has zero employees in Tyler.

F.        Any evidence, testimony, opinion, or reference regarding any request for PTAB review that is pending at the time of trial as to any claim of the patents in suit, including any review that has been instituted. This motion does not preclude discussion of PTAB review that was denied or not instituted as to any claim.

        **GRANTED-IN-PART**. Pursuant to the Court's ruling on Apple's related Motion *in Limine* 4, the last sentence is stricken from this Motion *in Limine*.

G.        Any argument, evidence, testimony, or reference to issues to be decided by the Court, such as laches, equitable estoppel, indefiniteness, injunction/post-trial damages, exceptional case/enhanced damages, attorneys' fees, ownership, 35 U.S.C. § 101, or post and pre-trial interest.

        **GRANTED**.

H.        Any argument, evidence, testimony, or reference regarding unaccepted offers to purchase any interest in the Smartflash patents.

        **DENIED**.

I.        Any argument, evidence, testimony, or reference involving live, physical demonstrations of alleged prior art.

        **STIPULATED**:

            With respect to Smartflash's Motion *in Limine* I, Defendants may present DXAPL 240, a Sony Memory Stick Walkman and CD, to the jury. The parties agree that this presentation will not include a live physical demonstration of the Sony Memory Stick Walkman system that purports to invalidate the asserted claims. This agreement does not preclude Defendants from otherwise presenting evidence and opinion that such a device invalidates the asserted claims. Except as agreed above regarding DX-APL 240 and related evidence and opinion, Defendants will not present additional live physical demonstrations of alleged prior art.

J.        Any argument, testimony, evidence, or reference regarding Smartflash's other litigation, or regarding unrelated patent infringement litigation initiated against Apple.

        **GRANTED**.

**Apple's Motions *in Limine* (Doc. No. 375)**

1.  To exclude any testimony, evidence, or argument during trial referencing any royalty sought by Apple in any other litigation.

    **STIPULATED**:

    > Apple will agree that Smartflash (or its witnesses) can say that in a previous litigation where Apple was a plaintiff against a competitor, Apple sought a running royalty and that Apple's damages expert relied, in part, on a survey to support his opinions. No party or witness will refer to royalty rates or damages sought by Apple against others in litigation or otherwise on Apple patents.

2.  To exclude any testimony, evidence, or argument during trial referencing the compensation or stock holdings of any current or former Apple employee, including Tim Cook.

    **AGREED**. Apple stipulated that it would **not** reference any ownership or compensation of any person associated with Smartflash, but Plaintiffs' counsel may elicit from Mr. Racz (the inventor of the patents-in-suit) that he has an interest in the outcome of the case. Additionally, Plaintiffs will **not** make reference to the equity ownership or compensation of an Apple employee.

3.  To exclude any testimony, evidence, or argument during trial referencing whether payment in any amount would create disruption or burden to Apple's operations or business.

    **GRANTED**. Apple represented it would not say, imply, or suggest that a judgment in this case or award of damages would cause a disruption in Apple's business or cause a burden to its operations.

4.  To exclude evidence, testimony, or argument during trial referencing any CBM petition or CBM proceeding that involves the patents-in-suit.

    **GRANTED**.

5.  To exclude evidence, testimony, or argument during trial referencing Apple's assertion of its patent rights, including but not limited to any Apple involvement with Rockstar Consortium.

    **GRANTED**.

6.  To exclude any testimony, evidence, or argument during trial referencing any royalty or royalty rate associated with Smartflash's settlements with Robot Entertainment,

Inc., KingsIsle Entertainment, Inc., or Game Circus LLC.  This motion does not exclude any testimony, evidence, or argument during trial referencing the fact that license agreements exist between Smartflash and Robot Entertainment, Inc., KingsIsle Entertainment, Inc., and Game Circus LLC.

**GRANTED** as modified pursuant to the parties' agreement that licenses referenced in the second sentence above are also excluded.

7.      To exclude any argument, testimony, evidence, or reference during trial to the parties' privilege logs or assertions of privilege.

**STIPULATED**:

> Smartflash will not refer to total Apple revenue/profits or revenue/profits for the accused products. Smartflash will only refer to the apportioned base as it calculates it. Apple agrees to Smartflash using profit margin on the accused products.

8.      To exclude any argument, testimony, evidence, or reference during trial to the parties' privilege logs or assertions of privilege.

**GRANTED**.  The parties shall approach the bench before asking questions that may elicit privileged information.  This Motion *in Limine* does **not** preclude Plaintiffs from asking a witness if he or she reviewed patents.  Additionally, Apple represented that its engineer-witnesses would not testify that they analyzed the patents-in-suit and determined Apple's products do not infringe.

9.      To exclude any testimony, evidence or argument during trial referencing Defendants' entry into a joint defense agreement or the existence of a joint defense privilege.

**AGREED**.  The parties stipulated that there is no need to mention a joint defense agreement if there is no discussion of other non-party defendants in other litigation related to the Court's ruling on Plaintiffs' Motion *in Limine* J.

10.     To exclude any testimony, evidence, or argument during trial referencing race or ethnicity.

**GRANTED**.

**Apple's Supplemental Motion *in Limine* (Doc. No. 395)**

11.    To exclude any testimony, evidence, or argument during trial referencing the testimony of Jeffrey B. Lotspiech regarding Apple purportedly trying to obtain a benefit by feigning interest in (a) purchasing technology from third parties, or (b) partnering with third parties.

**GRANTED**.

So ORDERED and SIGNED this 29th day of January, 2015.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE