UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNWIRED PLANET, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC,<br><br>    Defendant. | Case No. 13-cv-04134-VC<br><br>**ORDER RE FURTHER BRIEFING ON ON-SALE BAR** |

It appears that if the technology embodied by the '092 patent was licensed in the Motorola agreement, the on-sale bar would apply, despite the fact that Unwired Planet never developed a product that practiced the invention of the '092 patent (at least not with Motorola pursuant to the agreement).

However, it is not clear to the Court that the invention embodied by the '092 patent is a "future release," as that term is used in the Motorola agreement. Apple's argument seems to be that because Unwired licensed all future releases of WLS Software to Motorola, and because WLS Software included LFS technology, this license must necessarily include future versions of LFS technology, including the technology embodied by the '092 patent. Apple points to the definitions section of the agreement, which states that "'WLS Software' means the WLS software consisting of LFC, LSB, LFS Interface and LC developed by Company and licensed to Motorola hereunder and all Modifications and future releases thereof." Taken alone, this definition might suggest that "future releases" could be interpreted broadly to cover all future iterations of WLS software developed by Unwired.

But if this were true, one might expect the agreement to contain explicit language – perhaps in Section 4, which covers "Intellectual Property Rights" – making clear that Motorola

was purchasing not only the WLS Software that Unwired was developing for Motorola, but also all future versions and iterations of that software. But there is no such language. Instead, other than the "definitions" section mentioned above, the only part of the agreement that discusses "future releases" of WLS Software is Section 12, which covers Unwired's "Support Obligations." This section provides "that each new major release[1] (i.e., releases which incorporate new or improved functionality) of the WLS software shall be functionally compatible with the immediately preceding major release of the WLS Software." This language suggests that the agreement might not cover *all* future iterations of WLS Software, but rather only those that are directly compatible with, and a natural extension of, the WLS Software that is contemplated by the agreement. This makes sense given the overall nature of the agreement – Motorola is paying Unwired to develop software that can be integrated with its hardware, and so all future versions of that software should also be able compatible with Motorola's product.

Therefore, the Court is tentatively inclined to believe that the invention embodied by the '092 patent is a "future release" of the WLS Software *only* if the invention is compatible with the WLS Software that Unwired was to develop as part of the Motorola agreement. The Court invites the parties to submit supplemental briefs on this point. In their briefs, the parties should make sure to address the following questions:

- What evidence, if any, does Apple have to show that the invention embodied by the '092 patent is compatible with the WLS Software contemplated by the Motorola agreement?
- If the Court believes resolution of the on-sale bar issue is primarily a question of contract interpretation – namely, what is meant by "future releases" – what law should guide the Court's interpretation? And is this a question for the Court or for the jury?
- If the Court determines that the Motorola agreement is ambiguous with respect to what "future releases" means and whether the invention embodied by the '092 patent is covered by "future releases," does that mean the Court must grant summary judgment

---

[1] The agreement appears to use "major release" and "future release" interchangeably.

for Unwired Planet?

Further, the Court requests that, in their briefs, the parties help the Court understand the relevance, if any, of the following statements in the agreement:

- Section 2, Development Activities – "However, if Company determines that any such modifications will result in significant increased costs to or require significant additional time to deliver the WLS Software, there shall be an equitable adjustment in the Funding Amount or the anticipated delivery schedule, as agreed to by the parties."

- Section 4(f), Intellectual Property Rights – "Motorola shall have sole ownership of all right and title to any patent rights for any inventions or discoveries relating to any WLS Software . . . developed under this Agreement."

- Section 12(c), Support Obligations – "WLS Software . . . updates (i.e., fixes to correct defects and enhancements to the current release) shall be provided at no additional cost to Motorola . . . Future releases of WLS Software . . . and all components thereof (i.e., releases which incorporate new or improved functionality) shall be supplied as agreed to by the parties." Please focus on the phrase "as agreed to by the parties."

The briefs should not exceed eight double-spaced pages. The briefs should reference any evidence in the summary judgment record relevant to these questions, but they should not rely on any evidence not already in the record. They are due on Monday, May 11 at 10:00 a.m.

**IT IS SO ORDERED.**

Dated: May 7, 2015

---

VINCE CHHABRIA
United States District Judge

3