UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNWIRED PLANET, LLC,
Plaintiff,
v.
APPLE INC,
Defendant.

Case No. 13-cv-04134-VC

**SUMMARY JUDGMENT ORDER**

Re: Dkt. Nos. 311, 317

As a result of the Federal Circuit opinion partially vacating this Court's May 2015 summary judgment order, certain portions of the parties' cross-motions for summary judgment, previously mooted, have been revived for resolution before trial. *See Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353 (Fed. Cir. 2016); Dkt. Nos. 488, 496.

**I. Indirect infringement (all patents)**

Indirect infringement, whether induced or contributory, "requires knowledge of the patent in suit and knowledge of patent infringement." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015). "Knowledge" can be established with evidence of actual knowledge or willful blindness. *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344, 1347 (Fed. Cir. 2016). The willful blindness doctrine, borrowed from the criminal context, sets a high bar: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). This is more demanding than the "deliberate indifference to a known risk" previously used in the Federal Circuit. *Id.* at 770.

This Court initially granted summary judgment of no indirect infringement on the '092

patent based in part on "the strength of Apple's noninfringement argument." Dkt. No. 414 at 16.[1] The Federal Circuit vacated, clarifying that summary judgment cannot depend on "the objective strength of Apple's non-infringement arguments," but must instead be tied to Apple's subjective beliefs. In other words, the proper question under the first prong of willful blindness is whether Apple, contemporaneous with the period for which the infringement is alleged, "subjectively believe[d] that there [was] a high probability" of infringement. *Global-Tech*, 563 U.S. at 769. The objective strength of Apple's defenses may be relevant, and may help bolster or impugn Apple's reports of its own state of mind. But it is not necessarily dispositive.

The Court remains skeptical of Unwired's argument for indirect infringement on the '446 and '260 patents in the pre-suit period. Unwired has submitted relatively little evidence that it ever engaged in an upfront discussion with Apple regarding the details of its infringement allegations or the products accused of infringing. However, in light of the Federal Circuit's opinion, this Court cannot conclude that no genuine dispute of material fact remains for trial. Unwired has offered at least some evidence that Apple was familiar with the Unwired portfolio, specifically apprised of the '446 and '260 patents during licensing negotiations, and given enough detail about the substance of the patents that Apple might have been on notice of the mechanism of infringement. Dkt. No. 352-29 at 7-9; Dkt. No. 358-36.

Apple argues that it had no affirmative duty to investigate infringement and no duty to seek a letter from counsel. But this doesn't resolve the question of whether Apple took deliberate steps to avoid learning of infringement. Refusing to respond to an infringement allegation is no less a "deliberate action" than responding with a refusal. Although an accused infringer has no absolute obligation to investigate every risk of infringement, deliberate avoidance in the face of credible allegations might in some cases rise to the level of "deliberate action." *See, e.g.*, *Glob. Traffic Techs., LLC v. Emtrac Sys., Inc.*, No. CIV. 10-4110 ADM/JJG, 2014 WL 1663420, at *7 (D. Minn. Apr. 25, 2014), *aff'd in relevant part*, 620 F. App'x 895, 903 (Fed. Cir. 2015).

[1] All pincites are to the page numbers of the docket entry rather than the internal page numbers of the document cited.

Whether it does so here is a question for the jury.

The same cannot be said for pre-suit indirect infringement of the '092 patent. On that patent, Unwired has produced no evidence at all from which a jury could infer that Apple was aware of a high probability of infringement – or any probability of infringement – before this suit was filed. Unwired offers evidence that Apple's patent-prosecution counsel was aware of the '092 patent based on its inclusion in an Apple patent application. Dkt. 496 at 6. Unwired also offers evidence suggesting that Apple should have been familiar with the '092 patent because of its inclusion in the Unwired portfolio. *Id.* But none of this gives a jury reason to infer Apple's subjective belief that the patent was infringed. And although Unwired arguably accused Apple of infringing the '446 and '260 patents pre-suit, there's nothing about those accusations that could reasonably have led Apple to suspect there was an infringement issue with the '092 patent. Unwired's evidence reveals, at best, an undifferentiated risk of future infringement allegations that Apple might have had reason to explore – perhaps enough to go to trial on a negligence standard, but plainly not enough for willful blindness.

As for the post-suit period, Apple's argument for summary judgment is weaker. Apple does not appear to dispute that for the purposes of indirect infringement it has knowledge of the information in Unwired's complaint. *See CAP Co. v. McAfee, Inc.*, No. 14-CV-05068-JD, 2015 WL 3945875, at *5 (N.D. Cal. June 26, 2015). Instead, Apple relies even more heavily on its good-faith belief in the strength of its defenses. As discussed, there's reason to take Apple at its word. But without more post-suit evidence to rely on than the parties' dueling views on the merits, the argument over indirect infringement is derivative of the argument on direct infringement, and a fact dispute necessarily remains.

Summary judgment of no indirect infringement is granted on the '092 patent with respect to the pre-suit period. Summary judgment of no indirect infringement is otherwise denied.

**II. Invalidity (the '446 patent)**

Apple has moved for summary judgment of invalidity on the '446 patent on the theory that Yamakita is anticipatory prior art. Summary judgment was previously denied on

anticipation because Yamakita failed to disclose the "voice input" limitation of the '446 patent as this Court had construed it. Dkt. No. 414 at 11. With the benefit of the Federal Circuit's revised claim construction, that conclusion no longer stands. However, Apple still hasn't met its burden of demonstrating by clear and convincing evidence that all other claim limitations are fully disclosed. Accordingly, summary judgment of invalidity is again denied.

Claim 15 of the '446 patent requires that "the device specific identification information is utilized to retrieve user specific files to process the request for speech recognition services." According to Apple, Yamakita discloses this limitation in the process surrounding the "registration table" generated in response to a user request. Dkt. No. 356-4 at 43-44. But Apple has difficulty shoehorning the Yamakita teachings into the limitation described in the '446 patent without distorting the claim language in one patent or the other. For example, it isn't clear that Yamakita's device-specific information – the mobile device's terminal identification code – is in fact used to "retrieve" anything. The terminal ID code arrives alongside the formatting preference, so it can hardly be used to retrieve that. U.S. Patent No. 5,956,681 at 4:28-39. And to the extent Apple argues that the terminal ID is used to retrieve the registration table itself, Apple is conflating device-specific information with user-specific files in way the terms don't easily allow. The terminal ID is a discrete component of the registration table in the same way as the formatting preference and file names that the terminal ID might – perhaps – be said to "retrieve" based on its association with them. *See id.* at Fig. 10. To call one component of the registration table a kind of "information" and another the entire "file" tests the bounds of ordinary usage. Arguing that the terminal ID is used to "retrieve" the text files themselves is equally problematic. Once the speech-recognition process is complete, the terminal ID determines where the file is sent. *See* Dkt. No. 356-4 at 43. Even assuming "the request for speech recognition services" is understood as extending beyond the speech-recognition process to transmittal to the user's device, "retrieve" and "transmit" are not natural synonyms.

Claim 1 of the '446 patent requires "sending the symbolic data file to the wireless communication device using a second communication path." This Court has accepted the

parties' stipulated construction of "second communication path" as a "communication path that is separate from the first communication path." Dkt. No. 269 at 1. That appears to have left the door open to a further dispute over claim language, concerning whether an uplink path and a downlink path qualify as separate communication paths or a single bidirectional path. Each party points out that claims "must be interpreted and given the same meaning for purposes of both validity and infringement." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). Each party argues that the other fails to follow this principle. Of course, if the principle is violated, only Unwired is in the position of forfeiting its argument on the invalidity defense as a condition of allowing the underlying infringement allegation to proceed. But it isn't entirely beyond dispute that, specifically in the context of Siri, Unwired's expert has identified a second communication path other than that inherent in bidirectional communication over a single connection. *See* Dkt. No. 325-34 at 46. The Court therefore cannot say that Unwired's arguments for infringement and against invalidity are necessarily irreconcilable.

**III. Inequitable conduct (the '260 patent)**

The Court previously granted summary judgment of noninfringement on the '260 patent based on the "user information" limitation. As the Federal Circuit vacated that portion of the Court's last summary judgment order, the Court now reaches the question of Apple's inequitable conduct defense. Unwired's motion for summary judgment of no inequitable conduct is denied.

Apple has supplied enough evidence to create a triable question of fact on deceptive intent. The burden on Apple is high. *Star Sci., Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008) ("[Specific intent to deceive] must . . . be the single most reasonable inference able to be drawn from the evidence to meet the clear and convincing standard."); *see also Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290-91 (Fed. Cir. 2011) ("[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found."). But for the purpose of getting past a motion for summary judgment against the defense, the test is necessarily somewhat less demanding. The question is not whether Apple's circumstantial evidence requires an inference of deceptive intent, but whether Unwired's

presentation is sufficient to preclude a reasonable trier of fact from reaching that conclusion. Apple has provided evidence suggesting that the inventors were intimately familiar with the undisclosed prior art, knowledgeable about their responsibilities to the PTO, and aware that UP.Link's server-side provisioning was not a genuine basis for distinguishing the '260 patent from the prior art such that disclosure was unnecessary. *See* 356-4 at 9-10. Unwired's response – that the inventors' declarations of their own intent undercut any inference of deceit – doesn't resolve the factual dispute. *See* Dkt. No. 358-4 at 7. Indeed, if the inventors' self-reported state of mind were, as a rule, enough for summary judgment of no inequitable conduct, there would be little reason to allow fact-finders to draw inferences from indirect evidence in the first place. The Court remains skeptical of the case for deceptive intent. *See, e.g.*, *Star Sci.*, 537 F.3d at 1366 ("[T]he fact that information later found material was not disclosed cannot, by itself, satisfy the deceptive intent element of inequitable conduct."). But the question should be resolved at a bench trial.

Apple has also supplied enough evidence of the materiality and noncumulativeness of the prior art. Unwired challenges Mr. Rysavy's noncumulativeness determination based on his opinion that the Pepe reference reflects anticipatory prior art. *See* Dkt. No. 352-4 at 15-17 But the Court cannot conclude as a general rule – or based on the evidence the parties have submitted – that but-for materiality is necessarily foreclosed if a different reference before the PTO would be deemed anticipatory some time after patent prosecution. The information material to patent prosecution and the information dispositive of validity aren't inherently the same. *Cf. Therasense*, 649 F.3d at 1292. Here, Apple has offered reason to believe that the UP.Link reference was more complete, and that it would have invited a different inquiry at the PTO. *Compare* Dkt. No. 356-52 at 59-81 *with id.* at 82-94. *See also Semiconductor Energy Lab. Co. v. Samsung Elecs. Co.*, 204 F.3d 1368, 1374 (Fed. Cir. 2000), *amended* (Apr. 5, 2000). The Court remains somewhat skeptical of Apple's position, as it may verge on the kind of "reasonable examiner" standard the Federal Circuit effectively rejected in *Therasense*. But as it stands, the record before the Court invites a closer parsing of the undisclosed reference to

evaluate its possible effect on the patentability conclusion – an analysis well-suited to trial.

The parties should confer on dates for a bench trial on the inequitable conduct defense and present a joint proposal as soon as possible, but no later than March 8. The parties may contact the Courtroom Deputy with any questions about the Court's calendar.

**IV. Laches (the '446 and '260 patents)**

The Court previously granted summary judgment for Unwired on Apple's laches defense on the '092 patent. The Court found "no evidence that Unwired engaged in improper tactics or misleading conduct" and "no evidence of material prejudice that [Apple] suffered as a result of Unwired's delay." Dkt. No. 414 at 21. That conclusion applies with even greater force to the '446 and '260 patents. Apple's argument for prejudice makes no distinction between the patents in suit. Dkt. No. 356-4 at 24-25. And the delay on the '446 and '260 patents was even shorter than the delay on the '092 patent. *Id.* at 24. Unwired is granted summary judgment on Apple's laches defense on both patents.

**V. Marking (the '446 and '260 patents)**

The Court previously granted summary judgment for Unwired on Apple's marking defense on the '092 patent. That patent is "directed to a process or method," so the marking requirement is inapplicable. *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993). Unwired now argues that the same logic applies to the '260 patent because no apparatus claims from that patent remain at issue in this litigation. But the rule reaffirmed in *Crown Packaging* turns on the claims asserted, not the claims still active at or after summary judgment. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1317 (Fed. Cir. 2009) ("In this case and *Hanson*, the patentee only asserted method claims despite the fact that the patent contained both method and apparatus claims. In *American Medical*, in contrast, both apparatus and method claims of the '765 patent were asserted." (citation and internal quotation marks omitted)); *see also Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815, 837-38 (N.D. Cal. 2011). Unwired argues that it makes no intuitive sense for the marking defense to remain in place when the claims that initially justified it are no longer

present. But it makes no more intuitive sense to adopt Unwired's proposal, and to let the patentee's marking requirement stand or fall based on the course of litigation or the patentee's mid-suit strategies. *See American Medical*, 6 F.3d at 1538-39. Apparatus claims were asserted, so the marking requirement is not excused. *Mformation*, 830 F. Supp. 2d at 838.

On both the '446 and the '260 patents, the parties have no real dispute of material fact as to whether the products Apple identified practice the patents and are unmarked. Unwired acknowledges that if its burden to establish compliance with the marking statute applies as broadly as Apple claims, summary judgment must be granted in Apple's favor. Apple, in turn, acknowledges that because it didn't anticipate any threshold burden of proof on its defense, it isn't prepared to meet one. Summary judgment therefore depends entirely on the location and nature of the burden.

It is well-established that "[t]he patentee bears the burden of proving compliance by a preponderance of evidence." *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998). However, the Federal Circuit hasn't yet provided clear guidance on how broadly that burden applies – and specifically how it affects the threshold burden (if any) of demonstrating that products requiring marking exist. At its most demanding, the patentee's burden would require that Unwired prove compliance against an "unbounded" universe of products. *See Golden Bridge Tech. Inc v. Apple, Inc.*, No. 5:12-CV-04882-PSG, 2014 WL 1928977, at *11 (N.D. Cal. May 14, 2014); *see also Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 WL 5576228, at *2 (N.D. Cal. Nov. 15, 2011). At its least demanding, the patentee's burden would be triggered only after Apple first proved, by a preponderance of the evidence, that a product practiced the patent and was imported or offered for sale. The patentee would then have to show only that the product was marked.

Between these two alternatives, the first approach better reflects the patentee's underlying obligations. The patentee must prove not just that it marked, but that it "complied with the marking statute." *Nike*, 138 F.3d at 1446. If Apple bore the initial burden of proving that the marking requirement applied to specific products, Unwired could no longer be said to carry the

burden of proof with respect to the portions of 35 U.S.C. § 287 defining the scope of the requirement. Nor is the Court convinced that the patentee's burden of proof against an "unbounded" universe of products is particularly severe. The standard is a preponderance of the evidence. If the patentee submits a competent declaration credibly explaining why no unmarked products practice the patent, the accused infringer must then offer competent evidence in contradiction – a reference to specific products allegedly subject to the marking requirement, for example. *See Adrea, LLC v. Barnes & Noble, Inc.*, No. 13-CV-4137 JSR, 2015 WL 4610465, at *2 (S.D.N.Y. July 24, 2015). If the infringer isn't able to, the patentee has likely met its burden.

Unwired notes that several courts in this district have imposed a threshold "burden of production" on the accused infringer. *See Fortinet, Inc. v. Sophos, Inc.*, No. 13-CV-05831-EMC, 2015 WL 5971585, at *4-6 (N.D. Cal. Oct. 14, 2015). In some cases this appears to be nothing more than a kind of pleading burden, necessary to establish the threshold applicability of the marking defense. *Sealant Sys. Int'l, Inc. v. TEK Glob. S.R.L.*, No. 5:11-CV-00774-PSG, 2014 WL 1008183, at *31 (N.D. Cal. Mar. 7, 2014) ("TEK therefore bore the initial burden to put AMI on notice that IDQ may have sold specific products practicing the '581 patent."), *rev'd in part on other grounds*, 616 F. App'x 987 (Fed. Cir. 2015). In other cases, courts seem to be referring to a true burden of producing admissible evidence. *Oracle*, 2011 WL 5576228, at *3 ("[T]hese facts and the evidentiary record presented by Google do not establish that Oracle failed to mark patented articles . . . ."). But as discussed, the Federal Circuit's description of the overall marking burden is consistent only with the former. At most, the infringer bears some initial burden of plausibly identifying products subject to the marking requirement. Apple has met this burden. *See* Dkt. No. 356-4 at 15-16 & n.9; Dkt. No. 351-4 at 5 & n.5. Unwired hasn't responded with evidence that it complied, nor has it pointed to another form of pre-suit notice. The Court therefore grants summary judgment of no pre-suit damages on the '446 and '260 patents.

**IT IS SO ORDERED.**

Dated: February 14, 2017

VINCE CHHABRIA
United States District Judge