H. MARK LYON, SBN 162061
mlyon@gibsondunn.com
Y. ERNEST HSIN, SBN 201668
ehsin@gibsondunn.com
STUART M. ROSENBERG, SBN 239926
srosenberg@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300

TRACEY B. DAVIES (Admitted *Pro Hac Vice*)
Texas State Bar No. 24001858
tdavies@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201-6912
Telephone: 214.698.3100

BROOKE MYERS WALLACE, SBN 259169
bwallace@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071-3197
Telephone: 213.229.7000

*Attorneys for Defendant Apple Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| UNWIRED PLANET LLC, a Nevada limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No. 3:13-cv-4134-VC<br><br>**APPLE'S OPPOSITION TO UNWIRED PLANET'S MOTION *IN LIMINE* #7 TO PRECLUDE REFERENCE TO THE AGGREGATE PURCHASE PRICE OF UNWIRED PLANET'S OUTSTANDING COMMON SHARES** |

# I. INTRODUCTION

Apple Inc. ("Apple") opposes Unwired Planet LLC's ("Unwired's") motion *in Limine* No. 7 to preclude Apple from referencing or offering argument, evidence, or testimony related to the purchase price of Unwired by Pan Optis. Unwired's motion should be denied because the $40 million that Pan Optis paid to acquire Unwired—including its 200 patents from Unwired Planet, Inc. and 2,500 from Ericsson—is directly relevant to damages in this case as it is an actual market valuation of the portfolios. At the very least, Apple should be able to use the purchase price to rebut Unwired's claim that, for a non-exclusive license to **3 patents**, Apple should pay *more than six times as much* as Pan Optis paid to *buy* more than **2,700 patents**.

Unwired itself has injected into the case issues of how a court's invalidity or noninfringement ruling may impact the value of their patents. In particular, Unwired has put forward a fact witness, Mr. Tim Robbins, and a statement by that witness under FRCP 26(a)(2)(c), that is a purported assessment of the relative value of the patents in the portfolio to each other that expressly accounts for damage to the patent's value caused by adverse litigation results (the "Robbins Scorecard"). (D.I. 319, 333, 388 at 10-12). Unwired's damages expert relies on this Robbins Scorecard to arrive at his damages opinions. Through its motion, Unwired seeks to leverage what *it* wants the jury to hear about patent valuation in the face of patent litigation while preventing Apple from using the exact same type of evidence to defend itself. Apple respectfully requests that the Court deny Unwired's motion *in Limine* and allow Apple to present relevant evidence relating to Unwired's sale price.

# II. LEGAL STANDARD

Evidence of real-world sales of the asserted patents are relevant under the *Georgia-Pacific* factors because a party's damages analysis should be informed by "the market's actual valuation of the patent." *See e.g.*, *Commonwealth Scientific and Indus. Research Organisation v. Cisco Systems, Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (approving use of damages model to value asserted patent that took into account parties' actual valuation for licensing the asserted patents).

### III.    ARGUMENT

**A.    The Sale Price of Unwired's Patent Portfolio Is Highly Probative to Whether Unwired's Demanded License Price from Apple is a Reasonable Royalty**

An actual market valuation of the patents-in-suit, just like a comparable license to the patents-in-suit, is highly probative to damages. *See Robocast, Inc. v. Microsoft Corp.*, No. 10–1055-RGA, 2014 WL 202399, *3 (D. Del. Jan. 16, 2014) (declining to exclude defendant's expert's testimony based on valuation of patent purchase price at issue because the price "serves as a relevant data point in determining the value which the parties to the hypothetical negotiation would place on technologically similar patents"); *Spectralytics, Inc. v. Cordis Corp.*, 650 F.Supp.2d 900, 915-16 (D. Minn. 2009) (*affirmed in part, vacated in party by Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336 (Fed. Cir. 2011) (holding the weighing of evidence regarding the value of the acquisition of plaintiff's patents was a "task for the jury" in the damages analysis).

On April 6, 2016, Pan Optis, a patent enforcement entity, purchased all of Unwired's outstanding purchase shares for an aggregate price of $40 million. Ex. A (UPA_0218543-584). The main assets Pan Optis acquired were two patent portfolios: first, the 200 patents that Unwired Planet, Inc. (i.e., the old operating company) applied for or purchased in the 1990s and early 2000s (the parties have referred to these patents as the "legacy" patents, and they include the patents at issue in this case); and the 2,500 patents Unwired Planet, Inc. acquired from Ericsson in 2013.[1] *Id*. at 544-545.

Because Unwired's only "business" at the time of the sale to Pan Optis was as a holding company for these two portfolios, the sale price of the company is directly relevant to the market value of the patents. The sale price puts into perspective Unwired's damages appraisal, as its expert values a license to just Apple for the 3 patents-in-suit to be six times greater than the sale price for its entire 2,700-patent portfolio. The sales price also sheds light on the unreasonableness of Pan Optis and Unwired business model and expectations for a return on investment.  The sales price shows precisely that Unwired's demand is not a *reasonable* royalty.

---

[1] The other assets acquired by Pan Optis include rights to Unwired Planet's name and domain name, four trademarks, and approximately $3.3 million in cash and cash equivalents. Ex. B (UPA_0218585-590).

Any prejudice Unwired might suffer from the presentation of these facts to the jury is not *unfair prejudice.* Unwired chose to sell 2,700 patents for many times *less* than it is demanding from Apple for the alleged infringement of *three* patents. Unwired also chose to do so during the pendency of litigation.  More, Apple's expert, Mr. Malackowski will testify that it is common for sellers of patents to negotiate contingent back-end consideration to account for patent-specific risks, like the reversal of adverse legal rulings. Ex. C (Malackowski Supp. Rpt.) at 10. Had Unwired believed its patent portfolio, and therefore stock, had material value to be realized upon a successful appeal, it would have negotiated a sharing of any revenue realized from the pending litigation. *See id.* at 11. It did not, which undermines Unwired's argument that the purchase price was depressed by the "damage" caused by the Court's summary judgment of non-infringement. *See id.* at 10. That evidence is probative of the market's value of the patents and the jury should be able to consider whether it demonstrates the unreasonableness of Unwired's damages demands in this case.

**B.    Unwired Put the Impact of Litigation on Its Patents' Valuations at Issue**

Unwired's protestation that injecting the impact of patent litigation on its patents' value into the case will cause prejudice or delay is further without merit because Unwired has already done so. Unwired's main argument for excluding such evidence is that it is "axiomatic that the amount Unwired Planet was willing to sell its shares for would have been dramatically impacted by the summary judgment defeat." D.I. 537 at 1 (Unwired's MIL #7). Unwired cites nothing in support of this supposed axiom.

Unwired's damages analysis and royalty calculations are based on a "scorecard" created by Unwired employee Mr. Robbins that allegedly assesses the relative value of the asserted patents in this case compared to Unwired's entire legacy patent portfolio (comprising roughly 200 patent families). D.I. 318-15 (Mr. Robbins's "scorecard"); D.I. 318-3 at 11-12.  Mr. Robbins made his "scorecard" by calculating the relative value of each of the 82 patents he claims Unwired has a good-faith basis to assert against Apple in part by subtracting the patents not "in good standing" due to "damage" from adverse results in litigation (against Apple or other companies). *See, e.g.*, D.I. 318-13 at 76:23-77:4, 163:24-165:13; D.I. 318-15; *see also* D.I. 318-5 at 181:20-182:13. Unwired's damages expert Mr. Mills uses this "scorecard" as the *only* basis for his opinion that the patents-in-suit account

for a large percentage of the value of the entire Unwired Planet, Inc. portfolio. *Id*. Mr. Mills then uses that percentage in his adjustments to the Lenovo license to calculate what Unwired allegedly would have been "willing to accept" for a license to the '092, '260, and '446 patents. *Id*.; D.I. 318-14 at 225-226.  Thus, in reliance on the Robbins "scorecard," Unwired will necessarily have presented evidence and testimony that adverse results in litigation can depress the market value of patents. Because Unwired will already be presenting that evidence in the context of the Robbins "scorecard," this evidence cannot be unfairly prejudicial and a waste of time when presented in the context of the sale of the Unwired patent portfolio. Unwired cannot have it both ways.

Further, the parties need not refer to any specific past court orders or rulings in order to present this information.  It would be sufficient to say that there is uncertainty in every litigation until the jury's verdict, and the sale occurred during the period of uncertainty.

### C. Unwired Put the Terms of Sale at Issue

In addition to the Robbins' scorecard, Unwired may likely put the terms of sale, including aggregate purchase price of Unwired's common shares, at issue by calling a witness to testify regarding such sale. Unwired has indicated that it may bring a Pan Optis representative to testify at trial. The only relevant topic that such witness could testify to would be the terms of sale of the purchase of Unwired's stock. If Unwired presents this witness, it would unfairly prejudice Apple to not be allowed to ask him or her about the terms of the sale, including the price. The jury will naturally want to know for how much the patent portfolio sold. For this additional, independent reason, the Court should not preclude evidence of the price Unwired's portfolios were sold.

### D. Apple Would be Prejudiced If Prevented from Presenting Evidence to Rebut Unwired's Damages Scorecard

Prejudice would result only if Apple is prevented from putting on the same type of evidence to defend itself that Unwired seeks to use to prove its damages in this case.  To allow Unwired to put on purported evidence of patent value by use of or direct reliance on a "scorecard" that adjusts value based on litigation outcomes, but prevent Apple from submitting evidence on the premise that the Apple-proffered evidence raises issues related to the impact of litigation on patent value, is prejudicial to Apple.

## IV.  CONCLUSION

For at least these reasons, Apple opposes Unwired's motion *in Limine* No. 7, and respectfully requests that the Court allow Apple to present argument, evidence, and testimony related to the aggregate purchase price of Unwired's common shares because such evidence is relevant to the damages issues in this case.

DATED:  March 10, 2017

Respectfully submitted,

By:      /s/ Brooke Wallace

H. MARK LYON, SBN 162061
mlyon@gibsondunn.com
Y. ERNEST HSIN, SBN 201668
ehsin@gibsondunn.com
STUART M. ROSENBERG, SBN 239926
srosenberg@gibsondunn.com
Gibson, Dunn & Crutcher LLP
1881 Page Mill Road
Palo Alto, CA  94304-1211
Telephone:  650.849.5300

TRACEY B. DAVIES (*Pro Hac Vice*)
Texas State Bar No. 24001858
tdavies@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
2100 McKinney Ave., Suite 1100
Dallas, TX 75201-6912
Telephone: 214.698.3100

BROOKE MYERS WALLACE, SBN 259169
bwallace@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000

*Attorneys for APPLE INC.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Civil L.R. 5.4 and will be served upon all counsel of record for the parties who have consented to electronic service in accordance with Civil L.R. 5.4 via the Court's ECF system.

Dated: March 10, 2017

By: */s/ Christina Kogan*
Christina Kogan
GIBSON, DUNN & CRUTCHER LLP
*Attorney for Defendant Apple Inc.*